## DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION *v.* HALEY

No. 02–1824.　Argued March 2, 2004—Decided May 3, 2004

*R. Ted Cruz,* Solicitor General of Texas, argued the cause for petitioner. With him on the briefs were *Greg Abbott,* Attorney General, *Barry R. McBee,* First Assistant Attorney General, and *Danica L. Milios,* Assistant Solicitor General.

*Matthew D. Roberts* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Olson, Assistant Attorney General Wray,* and *Deputy Solicitor General Dreeben.*

*Eric M. Albritton,* by appointment of the Court, 540 U. S. 1044, argued the cause for respondent. With him on the brief was *Jeffrey L. Bleich.*\*

JUSTICE O'CONNOR delivered the opinion of the Court.

Out of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default. We have recognized a narrow exception to the general rule when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense or, in the capital sentencing context, of the aggravating circumstances rendering the inmate eligible for the death penalty. *Murray* v. *Carrier,* 477 U. S. 478 (1986); *Sawyer* v. *Whitley,* 505 U. S. 333 (1992). The question before us is whether this exception applies where an applicant asserts "actual innocence" of a noncapital sentence. Because the District Court failed first to consider alternative grounds for relief urged

---

\*A brief of *amici curiae* urging reversal was filed for the State of Illinois et al. by *Lisa Madigan,* Attorney General of Illinois, *Gary Feinerman,* Solicitor General, *Linda D. Woloshin* and *Domenica A. Osterberger,* Assistant Attorneys General, and *Dan Schweitzer,* and by the Attorneys General for their respective States as follows: *Bill Pryor* of Alabama, *Terry Goddard* of Arizona, *Mike Moore* of Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *Jon Bruning* of Nebraska, *Jim Petro* of Ohio, *W. A. Drew Edmondson* of Oklahoma, *Hardy Myers* of Oregon, *Lawrence E. Long* of South Dakota, *Mark L. Shurtleff* of Utah, and *Patrick J. Crank* of Wyoming.

Briefs of *amici curiae* urging affirmance were filed for Zachary W. Carter et al. by *James Orenstein* and *Alison Tucher;* and for James S. Liebman et al. by *Edward C. DuMont.*

by respondent, grounds that might obviate any need to reach the actual innocence question, we vacate the judgment and remand.

## I

In 1997, respondent Michael Wayne Haley was arrested after stealing a calculator from a local Wal-Mart and attempting to exchange it for other merchandise. Respondent was charged with, and found guilty at trial of, theft of property valued at less than $1,500, which, because respondent already had two prior theft convictions, was a "state jail felony" punishable by a maximum of two years in prison. App. 8; Tex. Penal Code Ann. § 31.03(e)(4)(D) (Supp. 2004). The State also charged respondent as a habitual felony offender. The indictment alleged that respondent had two prior felony convictions and that the first—a 1991 conviction for delivery of amphetamine—"became final prior to the commission" of the second—a 1992 robbery. App. 9. The timing of the first conviction and the second offense is significant: Under Texas' habitual offender statute, only a defendant convicted of a felony who "has previously been finally convicted of two felonies, *and* the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, . . . shall be punished for a second-degree felony." § 12.42(a)(2) (emphasis added). A second degree felony carries a minimum sentence of 2 and a maximum sentence of 20 years in prison. § 12.33(a) (2003).

Texas provides for bifurcated trials in habitual offender cases. Tex. Code Crim. Proc. Ann., Art. 37.07, § 3 (Vernon Supp. 2004). If a defendant is found guilty of the substantive offense, the State, at a separate penalty hearing, must prove the habitual offender allegations beyond a reasonable doubt. *Ibid.* During the penalty phase of respondent's trial, the State introduced records showing that respondent had been convicted of delivery of amphetamine on October 18, 1991, and attempted robbery on September 9, 1992. The record of the second conviction, however, showed that re-

spondent had committed the robbery on October 15, 1991—three days *before* his first conviction became final. Neither the prosecutor, nor the defense attorney, nor the witness tendered by the State to authenticate the records, nor the trial judge, nor the jury, noticed the 3-day discrepancy. Indeed, the defense attorney chose not to cross-examine the State's witness or to put on any evidence.

The jury returned a verdict of guilty on the habitual offender charge and recommended a sentence of 16½ years; the court followed the recommendation. Respondent appealed. Appellate counsel did not mention the 3-day discrepancy nor challenge the sufficiency of the penalty-phase evidence to support the habitual offender enhancement. The State Court of Appeals affirmed respondent's conviction and sentence; the Texas Court of Criminal Appeals refused respondent's petition for discretionary review.

Respondent thereafter sought state postconviction relief, arguing for the first time that he was ineligible for the habitual offender enhancement based on the timing of his second conviction. App. 83, 87–88. The state habeas court refused to consider the merits of that claim because respondent had not raised it, as required by state procedural law, either at trial or on direct appeal. *Id.*, at 107, 108. The state habeas court rejected respondent's related ineffective assistance of counsel claim, saying only that "counsel was not ineffective" for failing to object to or to appeal the enhancement. *Id.*, at 108. The Texas Court of Criminal Appeals summarily denied respondent's state habeas application. *Id.*, at 109.

In August 2000, respondent filed a timely *pro se* application for a federal writ of habeas corpus pursuant to 28 U. S. C. § 2254, renewing his sufficiency of the evidence and ineffective assistance of counsel claims. App. 110, 118–119; *id.*, at 122, 124, 126–127. The State conceded that respondent was "correct in his assertion that the enhancement paragraphs as alleged in the indictment do not satisfy section 12.42(a)(2) of the Texas Penal Code." *Id.*, at 132, 140.

Rather than agree to resentencing, however, the State argued that respondent had procedurally defaulted the sufficiency of the evidence claim by failing to raise it before the state trial court or on direct appeal. *Id.*, at 142–144. The Magistrate Judge, to whom the habeas application had been referred, recommended excusing the procedural default and granting the sufficiency of the evidence claim because respondent was "'actually innocent' of a sentence for a second-degree felony." *Haley* v. *Director, Texas Dept. of Criminal Justice, Institutions Div.*, Civ. No. 6:00cv518 (ED Tex., Sept. 13, 2001), p. 10, App. to Pet. for Cert. 49a (citing *Sones* v. *Hargett*, 61 F. 3d 410, 419 (CA5 1995)). Because she recommended relief on the erroneous enhancement claim, the Magistrate Judge did not address respondent's related ineffective assistance of counsel challenges. App. to Pet. for Cert. 50a–52a. The District Court adopted the Magistrate Judge's report, granted the application, and ordered the State to resentence respondent "without the improper enhancement." *Id.*, at 36a–37a (Oct. 27, 2001).

The Court of Appeals for the Fifth Circuit affirmed, holding narrowly that the actual innocence exception "applies to noncapital sentencing procedures involving a career or habitual felony offender." *Haley* v. *Cockrell*, 306 F. 3d 257, 264 (2002). The Fifth Circuit thus joined the Fourth Circuit in holding that the exception should not extend beyond allegedly erroneous recidivist enhancements to other claims of noncapital factual sentencing error: "[T]o broaden the exception further would 'swallow' the 'cause portion of the cause and prejudice requirement' and it 'would conflict squarely with Supreme Court authority indicating that generally more than prejudice must exist to excuse a procedural default.'" *Id.*, at 266 (quoting *United States* v. *Mikalajunas*, 186 F. 3d 490, 494–495 (CA4 1999)). Finding the exception satisfied, the panel then granted relief on the merits of respondent's otherwise defaulted sufficiency of the evidence claim. In so doing, the panel assumed that challenges to the

sufficiency of noncapital sentencing evidence are cognizable on federal habeas under *Jackson* v. *Virginia*, 443 U. S. 307 (1979). 306 F. 3d, at 266–267 (citing *French* v. *Estelle*, 692 F. 2d 1021, 1024–1025 (CA5 1982)).

The Fifth Circuit's decision exacerbated a growing divergence of opinion in the Courts of Appeals regarding the availability and scope of the actual innocence exception in the noncapital sentencing context. Compare *Embrey* v. *Hershberger*, 131 F. 3d 739 (CA8 1997) (en banc) (no actual innocence exception for noncapital sentencing error); *Reid* v. *Oklahoma*, 101 F. 3d 628 (CA10 1996) (same), with *Spence* v. *Superintendent, Great Meadow Correctional Facility*, 219 F. 3d 162 (CA2 2000) (actual innocence exception applies in noncapital sentencing context when error is related to finding of predicate act forming the basis for enhancement), and *Mikalajunas, supra* (actual innocence exception applies in noncapital sentencing context where error relates to a recidivist enhancement). We granted the State's request for a writ of certiorari, 540 U. S. 945 (2003), and now vacate and remand.

## II

The procedural default doctrine, like the abuse of writ doctrine, "refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions." *McCleskey* v. *Zant*, 499 U. S. 467, 489 (1991). A corollary to the habeas statute's exhaustion requirement, the doctrine has its roots in the general principle that federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds. *Wainwright* v. *Sykes*, 433 U. S. 72, 81 (1977); *Brown* v. *Allen*, 344 U. S. 443, 486–487 (1953). But, while an adequate and independent state procedural disposition strips this Court of certiorari jurisdiction to review a state court's judgment, it provides only a strong prudential reason, grounded in "considerations of comity and concerns for the orderly administration of criminal justice,"

not to pass upon a defaulted constitutional claim presented for federal habeas review. *Francis* v. *Henderson*, 425 U. S. 536, 538–539 (1976); see also *Fay* v. *Noia*, 372 U. S. 391, 399 (1963) ("[T]he doctrine under which state procedural defaults are held to constitute an adequate and independent state law ground barring direct Supreme Court review is not to be extended to limit the power granted the federal courts under the federal habeas statute"). That being the case, we have recognized an equitable exception to the bar when a habeas applicant can demonstrate cause and prejudice for the procedural default. *Wainwright, supra,* at 87. The cause and prejudice requirement shows due regard for States' finality and comity interests while ensuring that "fundamental fairness [remains] the central concern of the writ of habeas corpus." *Strickland* v. *Washington*, 466 U. S. 668, 697 (1984).

The cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice. *Murray* v. *Carrier*, 477 U. S. 478 (1986), thus recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Id.,* at 496; accord, *Schlup* v. *Delo*, 513 U. S. 298 (1995). We subsequently extended this exception to claims of capital sentencing error in *Sawyer* v. *Whitley*, 505 U. S. 333 (1992). Acknowledging that the concept of " 'actual innocence' " did not translate neatly into the capital sentencing context, we limited the exception to cases in which the applicant could show "by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Id.,* at 336.

We are asked in the present case to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. We decline to answer the question in the posture of this case and instead hold that a federal court faced with allegations of actual inno-

cence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default.

This avoidance principle was implicit in *Carrier* itself, where we expressed confidence that, "for the most part, 'victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard.'" 477 U. S., at 495–496 (quoting *Engle* v. *Isaac*, 456 U. S. 107, 135 (1982)). Our confidence was bolstered by the availability of ineffective assistance of counsel claims—either as a ground for cause or as a freestanding claim for relief—to safeguard against miscarriages of justice. The existence of such safeguards, we observed, "may properly inform this Court's judgment in determining '[w]hat standards should govern the exercise of the habeas court's equitable discretion' with respect to procedurally defaulted claims." *Carrier, supra,* at 496 (quoting *Reed* v. *Ross,* 468 U. S. 1, 9 (1984)).

Petitioner here conceded at oral argument that respondent has a viable and "significant" ineffective assistance of counsel claim. Tr. of Oral Arg. 18 ("[W]e agree at this point there is a very significant argument of ineffective assistance of counsel"); see also *id.,* at 7 (agreeing "not [to] raise any procedural impediment" to consideration of the merits of respondent's ineffective assistance claim on remand). Success on the merits would give respondent all of the relief that he seeks—*i. e.,* resentencing. It would also provide cause to excuse the procedural default of his sufficiency of the evidence claim. *Carrier, supra,* at 488.

Contrary to the dissent's view, see *post,* at 397 (opinion of STEVENS, J.), it is precisely because the various exceptions to the procedural default doctrine are judge-made rules that courts as their stewards must exercise restraint, adding to or expanding them only when necessary. To hold otherwise would be to license district courts to riddle the cause and prejudice standard with ad hoc exceptions whenever they perceive an error to be "clear" or departure from the rules

expedient. Such an approach, not the rule of restraint adopted here, would have the unhappy effect of prolonging the pendency of federal habeas applications as each new exception is tested in the courts of appeals. And because petitioner has assured us that the State will not seek to reincarcerate respondent during the pendency of his ineffective assistance claim, Tr. of Oral Arg. 52 ("[T]he state is willing to allow the ineffective assistance case to be litigated before proceeding to reincarcerate [respondent]"), the negative consequences for respondent of our judgment to vacate and remand in this case are minimal.

While availability of other remedies alone would be sufficient justification for a general rule of avoidance, the many threshold legal questions often accompanying claims of actual innocence provide additional reason for restraint. For instance, citing *Jackson* v. *Virginia*, 443 U. S. 307 (1979), respondent here seeks to bring through the actual innocence gateway his constitutional claim that the State's penalty-phase evidence was insufficient to support the recidivist enhancement. But the constitutional hook in *Jackson* was *In re Winship*, 397 U. S. 358 (1970), in which we held that due process requires proof of each element of a criminal offense beyond a reasonable doubt. We have not extended *Winship*'s protections to proof of prior convictions used to support recidivist enhancements. *Almendarez-Torres* v. *United States*, 523 U. S. 224 (1998); see also *Apprendi* v. *New Jersey*, 530 U. S. 466, 488–490 (2000) (reserving judgment as to the validity of *Almendarez-Torres*); *Monge* v. *California*, 524 U. S. 721, 734 (1998) (Double Jeopardy Clause does not preclude retrial on a prior conviction used to support recidivist enhancement). Respondent contends that *Almendarez-Torres* should be overruled or, in the alternative, that it does not apply because the recidivist statute at issue required the jury to find not only the existence of his prior convictions but also the additional fact that they were sequential. Brief for Respondent 30–31. These difficult

constitutional questions, simply assumed away by the dissent, see *post*, at 397 (citing *Jackson, supra*, and *Thompson* v. *Louisville*, 362 U. S. 199 (1960)), are to be avoided if possible.

To be sure, not all claims of actual innocence will involve threshold constitutional issues. Even so, as this case and the briefing illustrate, such claims are likely to present equally difficult questions regarding the scope of the actual innocence exception itself. Whether and to what extent the exception extends to noncapital sentencing error is just one example. The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE KENNEDY and JUSTICE SOUTER join, dissenting.

The unending search for symmetry in the law can cause judges to forget about justice. This should be a simple case.

Respondent was convicted of the theft of a calculator. Because of his prior theft convictions, Texas law treated respondent's crime as a "state jail felony," which is punishable by a maximum sentence of two years in jail. Tex. Penal Code Ann. § 12.35(a) (2003). But as a result of a congeries of mistakes made by the prosecutor, the trial judge, and his attorney, respondent was also erroneously convicted and sentenced under Texas' habitual offender law, § 12.42(a)(2) (Supp. 2004). Respondent consequently received a sentence of more than 16 years in the penitentiary. The State concedes that respondent does not qualify as a habitual offender and that the 16-year sentence was imposed in error.[1] Respondent has already served more than 6 years of that sentence—a sentence far in excess of the 2-year maximum that Texas law authorizes for respondent's crime.

---

[1] Brief for Petitioner 4; Tr. of Oral Arg. 4 ("[I]t's almost a law school hypothetical, because the error is so clean").

Because, as all parties agree, there is no factual basis for respondent's conviction as a habitual offender, it follows inexorably that respondent has been denied due process of law. *Thompson* v. *Louisville*, 362 U. S. 199 (1960); *Jackson* v. *Virginia*, 443 U. S. 307 (1979). And because that constitutional error clearly and concededly resulted in the imposition of an unauthorized sentence, it also follows that respondent is a "victim of a miscarriage of justice," *Wainwright* v. *Sykes*, 433 U. S. 72, 91 (1977), entitled to immediate and unconditional release.

The Magistrate Judge, the District Court, and the Court of Appeals all concluded that respondent is entitled to such relief. Not a word in any federal statute or any provision of the Federal Rules of Procedure provides any basis for challenging that conclusion. The Court's contrary determination in this case rests entirely on a procedural rule of its own invention. But having also invented the complex jurisprudence that requires a prisoner to establish "cause and prejudice" as a basis for overcoming procedural default, the Court unquestionably has the authority to recognize a narrow exception for the unusual case that is as clear as this one.

Indeed, in the opinion that first adopted the cause and prejudice standard, the Court explained its purpose as providing "an adequate guarantee" that a procedural default would "not prevent a federal habeas court from adjudicating for the first time the federal constitutional claim of a defendant who in the absence of such an adjudication will be the victim of a miscarriage of justice." *Ibid.* The Court has since held that in cases in which the cause and prejudice standard is inadequate to protect against fundamental miscarriages of justice, the cause and prejudice requirement "must yield to the imperative of correcting a fundamentally unjust incarceration." *Engle* v. *Isaac*, 456 U. S. 107, 135 (1982).

If there were some uncertainty about the merits of respondent's claim that he has been incarcerated unjustly, it

might make sense to require him to pursue other avenues for comparable relief before deciding the claim.[2] But in this case, it is universally acknowledged that respondent's incarceration is unauthorized. The miscarriage of justice is manifest. Since the "imperative of correcting a fundamentally unjust incarceration" will lead to the issuance of the writ regardless of the outcome of the cause and prejudice inquiry, the Court's ruling today needlessly postpones final adjudication of respondent's claim and perversely prolongs the very injustice that the cause and prejudice standard was designed to prevent.

That the State has decided to oppose the grant of habeas relief in this case, even as it concedes that respondent has already served more time in prison than the law authorized, might cause some to question whether the State has forgotten its overriding "obligation to serve the cause of justice." *United States* v. *Agurs*, 427 U. S. 97, 111 (1976); see *post*, p. 399 (KENNEDY, J., dissenting). But this Court is surely no less at fault. In its attempt to refine the boundaries of the judge-made doctrine of procedural default, the Court has lost sight of the basic reason why the "writ of habeas corpus indisputably holds an honored position in our jurisprudence." *Engle*, 456 U. S., at 126. Habeas corpus is, and has for centuries been, a "bulwark against convictions that violate fun-

---

[2] Because it is not always easy to discern the difference between "constitutional claims that call into question the reliability of an adjudication of legal guilt," to which the cause and prejudice requirement applies, and claims that a constitutional violation "probably resulted in the conviction of one who is actually innocent," for which failure to show cause is excused, *Murray* v. *Carrier*, 477 U. S. 478, 495–496 (1986), a court reviewing a claim of actual innocence must generally proceed with caution. But that type of caution is plainly unwarranted in a case in which constitutional error has concededly resulted in the imposition of an unlawful sentence. In such a case, there is simply no risk that entertaining the habeas applicant's procedurally defaulted claim will result in an unwarranted encroachment on the principles of comity and finality that underlie the procedural default doctrine.

damental fairness." *Ibid.* (internal quotation marks omitted). Fundamental fairness should dictate the outcome of this unusually simple case.

I respectfully dissent.

JUSTICE KENNEDY, dissenting.

For the reasons JUSTICE STEVENS sets forth, the respondent should be entitled to immediate relief, and I join his dissenting opinion. The case also merits this further comment concerning the larger obligation of state or federal officials when they know an individual has been sentenced for a crime he did not commit.

In 1997, Michael Haley was sentenced to serve 16 years and 6 months in prison for violating the Texas habitual offender law. Texas officials concede Haley did not violate this law. They agree that Haley is guilty only of theft, a crime with a 2-year maximum sentence. Yet, despite the fact that Haley served more than two years in prison for his crime, Texas officials come before our Court opposing Haley's petition for relief. They wish to send Haley back to prison for a crime they agree he did not commit.

The rigors of the penal system are thought to be mitigated to some degree by the discretion of those who enforce the law. See, *e. g.*, Jackson, The Federal Prosecutor, 31 J. Am. Inst. Crim. L. & C. 3, 6 (1940–1941). The clemency power is designed to serve the same function. Among its benign if too-often ignored objects, the clemency power can correct injustices that the ordinary criminal process seems unable or unwilling to consider. These mechanisms hold out the promise that mercy is not foreign to our system. The law must serve the cause of justice.

These mitigating elements seem to have played no role in Michael Haley's case. Executive discretion and clemency can inspire little confidence if officials sworn to fight injustice choose to ignore it. Perhaps some would say that Haley's innocence is a mere technicality, but that would miss the

point.   In a society devoted to the rule of law, the difference between violating or not violating a criminal statute cannot be shrugged aside as a minor detail.

It may be that Haley's case provides a convenient mechanism to vindicate an important legal principle.   Beyond that, however, Michael Haley has a greater interest in knowing that he will not be reincarcerated for a crime he did not commit.   It is not clear to me why the State did not exercise its power and perform its duty to vindicate that interest in the first place.