**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0329n.06
Filed: April 28, 2005

No. 04-4012

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CHRISTOPHER NELLOMS, | ) | |
| | ) | |
| **Petitioner-Appellant,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| WANZA JACKSON, | ) | |
| | ) | **O P I N I O N** |
| **Respondent-Appellee.** | ) | |
| _____ | ) | |

**Before:  KENNEDY and MOORE, Circuit Judges and RESTANI,***  **Judge.**

**KAREN NELSON MOORE, Circuit Judge.**  Petitioner-Appellant Christopher Nelloms

("Nelloms") appeals the district court's denial of his petition for writ of habeas corpus on the ground

of procedural default.  Specifically, Nelloms contends that procedural default of his due process

claim ought to be excused in order to prevent a fundamental miscarriage of justice.  For the

following reasons, we **AFFIRM** the district court's judgment.

## I.  BACKGROUND

On June 4, 1998, Nelloms was indicted in Ohio state court for one count of felonious sexual

penetration in violation of Ohio Rev. Code § 2907.12(A)(1)(b) ("Count I"), eight counts of rape of

a person under thirteen years of age in violation of Ohio Rev. Code § 2907.02(A)(1)(b) ("Counts

---

*The Honorable Jane A. Restani, Chief Judge of the United States Court of International
Trade, sitting by designation.

II, III, and V through X"), and one count of attempted rape of a person under thirteen years of age in violation of Ohio Rev. Code § 2907.02(A)(1)(b) ("Count IV"). The charges stemmed from allegations by Nelloms's daughter who alleged that Nelloms engaged in sexual acts with her in Kentucky and Ohio from 1995 to 1997. The indictment alleged that Counts I through V (the felonious penetration charge, the attempted rape charge, and three of the rape charges) were committed by Nelloms in Kentucky ("Kentucky convictions"). The remaining five counts of rape (Counts VI through X) were alleged to have occurred in Ohio ("Ohio convictions").

Following a jury trial, Nelloms was convicted of felonious penetration and seven counts of rape.[1] Nelloms filed a post-conviction motion for a new trial on the grounds of prosecutorial and juror misconduct. An evidentiary hearing was held on Nelloms's juror misconduct claim, but the trial court ultimately denied Nelloms's motion. At sentencing, the trial court ordered a life sentence on each of the seven counts with the sentences for Counts I, V, VI and X to be served consecutive to each other and concurrent to the remaining counts.

On February 26, 1999, Nelloms appealed his conviction to the Ohio Court of Appeals, alleging: (1) that the trial court improperly convicted him of the "Kentucky convictions" as it lacked subject-matter jurisdiction over these crimes; and (2) that he was denied his due process rights to trial by an impartial jury and to effective assistance of counsel. Nelloms's brief to the Ohio Court of Appeals concluded by arguing that based on these trial-court errors, his conviction "should be reversed and a new trial granted to Defendant-Appellant." Joint Appendix ("J.A.") at 81 (Nelloms's Ohio Ct. App. Br. at 20). The Ohio Court of Appeals determined that Nelloms's claims based on

---

[1]Nelloms was acquitted of Count IV for attempted rape, and the state dismissed Count VII, one of the rape charges alleged to have occurred in Ohio.

2

juror misconduct and ineffective assistance of counsel were meritless. The Ohio Court of Appeals concluded, however, that the trial court lacked jurisdiction over the Kentucky convictions. As a result, the Ohio Court of Appeals remanded the case to the trial court with instructions for the trial court "to dismiss Counts I, II, III and V of the indictment, for lack of subject-matter jurisdiction, and to enter an appropriate sentence on Counts VI, VIII, IX and X." J.A. at 132 (Ohio Ct. App. Op. at 11).

Nelloms then filed an appeal with the Ohio Supreme Court asserting that the Ohio Court of Appeals erred in failing to order a new trial on the Ohio convictions, rather than merely resentencing. Specifically, Nelloms argued that he was entitled to a new trial on the Ohio convictions "since failure [to order a new trial] would violate his Due Process and constitutional rights on the grounds he has been unduly prejudiced and denied a fair trial by the jury's exposure to the evidence for [the Kentucky convictions]." J.A. at 135 (Nelloms's Ohio S. Ct. Br. at 3). On March 15, 2000, the Ohio Supreme Court denied Nelloms's appeal on the ground that it did not involve "any substantial constitutional question." J.A. at 173 (Ohio S. Ct. Order).

Following the Ohio Supreme Court's rejection of Nelloms's appeal, the case was remanded to the trial court. Once before the trial court, Nelloms filed a motion for a new trial, asserting that: (1) he "was unduly prejudiced in violation of his due process and constitutional rights when the State, during the first trial, presented evidence of alleged crimes over which it did not have jurisdiction," and (2) he had "newly discovered evidence that [would] prove [Nelloms's] innocence on the remaining counts." J.A. at 175-76 (Mot. for New Trial at 2-3). The trial court rejected Nelloms's claims on the basis that Nelloms's motion was untimely pursuant to Ohio Crim. R. 33(B) and, alternatively, that no constitutional violations existed that would warrant a new trial. The trial

3

court also denied Nelloms's motion for reconsideration of his motion for a new trial. The trial court then held a resentencing hearing on June 23, 2000. At the conclusion of the hearing, the trial judge resentenced Nelloms to life imprisonment on each of the four remaining counts and ordered that the life sentences be served consecutively. This resulted in a sentence which in the aggregate was the same length as Nelloms's original sentence.

Nelloms's defense counsel then filed a brief in the Ohio Court of Appeals pursuant to *Anders v. California*, 386 U.S. 738 (1967). The Ohio Court of Appeals instructed Nelloms that he then had sixty days to file a pro se brief with the court. During this time period Nelloms was able to secure alternate counsel. Nelloms's new counsel subsequently filed a brief asserting only that the trial court's resentencing determination violated due process, as outlined by the Supreme Court in *North Carolina v. Pearce*, 395 U.S. 711 (1969). Nelloms did not appeal the trial court's denial of his motion for a new trial. On June 1, 2001, the Ohio Court of Appeals rejected Nelloms's claim, as it concluded that the mandates of *Pearce* were not violated under the circumstances of this case. Finally, Nelloms filed another appeal to the Ohio Supreme Court, arguing only that "[i]n order to prevent vindictiveness against defendants who successfully appeal a decision of the trial court, due process of law requires that a trial judge not re-sentence a defendant to consecutive sentences which were previously ordered to be served concurrently without stating the reasoning for doing so affirmatively on the record." J.A. at 283 (Nelloms's Ohio S. Ct. Br. at 1). The Ohio Supreme Court again dismissed Nelloms appeal "as not involving any substantial constitutional question." J.A. at 328 (Ohio S. Ct. Order).

On December 26, 2002, Nelloms filed a petition for writ of habeas corpus in federal district court. Nelloms's petition argued that the Ohio state courts violated his due-process rights by failing

4

to order a new trial on the Ohio convictions after concluding that the trial court lacked subject-matter jurisdiction over the Kentucky convictions. The magistrate judge assigned to the case issued his Report and Recommendations on August 13, 2003. In the report, the magistrate judge recommended that Nelloms's petition be dismissed on grounds of procedural default. Alternatively, the magistrate judge recommended that even if Nelloms's claim was not procedurally defaulted, his petition ought to be denied on the merits. The district court adopted the magistrate judge's Report and Recommendations as to procedural default, concluding that Nelloms had procedurally defaulted his claim. As a result, the district court did not address the merits of Nelloms's claim. The district court did, however, issue a certificate of appealability as to whether procedural default had occurred in this case. Nelloms then filed this timely appeal.

## II. ANALYSIS

We review de novo the district court's legal conclusions in denying Nelloms habeas relief. *Souter v. Jones*, 395 F.3d 577, 584 (6th Cir. 2005). On appeal Nelloms does not dispute that he procedurally defaulted his due process claim seeking a new trial. *See* Appellant Br. at 10 ("The district court correctly determined that Mr. Nelloms'[s] sole habeas corpus claim was procedurally defaulted . . . by virtue of not having been fully and fairly presented to the Ohio court of appeals."). Instead, Nelloms contends that any procedural default of his due process claim should be excused in order to avoid a fundamental miscarriage of justice. We find Nelloms's argument to be meritless as he has failed to establish that our refusal to entertain his claim will result in a fundamental miscarriage of justice.

As the Supreme Court recently reiterated, a federal court will ordinarily not review a procedurally defaulted constitutional claim raised on habeas corpus review "[o]ut of respect for

5

finality, comity, and the orderly administration of justice." *Dretke v. Haley*, 541 U.S. 386, 124 S. Ct. 1847, 1849 (2004). This is a corollary to the rule that "federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds." *Id*. at 1852. The only exceptions to this rule are when a state prisoner can demonstrate cause for the procedural default and prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to review the constitutional claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). A prisoner may establish a fundamental miscarriage of justice by showing that a constitutional error probably resulted in the conviction of one who is actually innocent. *See, e.g., Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004). In order to raise a claim of actual innocence, a prisoner "must present[] evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Souter*, 395 F.3d at 589-90 (quoting *Schulp v. Delo*, 513 U.S. 298, 316 (1995)) (internal quotation marks omitted). This standard applies when a prisoner presents a valid claim of constitutional error. *Schulp*, 513 U.S. at 316.

In this case Nelloms does not argue that new evidence suggests that he was actually innocent of the crimes for which he was convicted in state court. Instead, Nelloms argues in his brief that "requiring a state-court defendant to simultaneously defend against five charges arising out of conduct in one state and five charges arising out of conduct wholly in another state, and denying the defendant federal habeas review, constitutes a fundamental miscarriage of justice." Appellant Br. at 12.[2] In essence, Nelloms requests that we expand the definition of a fundamental miscarriage of

---

[2]At oral argument, Nelloms's defense counsel argued for the first time that the state trial court's resentencing of Nelloms in violation of *North Carolina v. Pearce*, 395 U.S. 711 (1969), also constitutes a fundamental miscarriage of justice. This argument was not raised in Nelloms's brief

justice beyond the actual innocence exception carved out by the Supreme Court. We decline to expand the fundamental-miscarriage-of-justice exception in this manner.

Our prior precedent indicates that we may review a procedurally defaulted claim only where a state prisoner has established either cause and prejudice or actual innocence. *See, e.g., Burton v. Renico*, 391 F.3d 764, 773 (6th Cir. 2004) ("When a criminal defendant has procedurally defaulted his or her ability to obtain federal habeas relief by failing to comply with a state procedural rule, the defendant *must* show 'cause and prejudice' or actual innocence in order to overcome the procedural default.") (emphasis added). Indeed, we have expressly stated that, "[w]ith respect to a miscarriage of justice, a petitioner *must* demonstrate that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent of the crime.'" *House v. Bell*, 386 F.3d 668, 677 (6th Cir. 2004) (en banc) (quoting *Schlup*, 513 U.S. at 324) (emphasis added). Additionally, Nelloms's claim that the Supreme Court has not foreclosed expansion of the fundamental-miscarriage-of-justice exception to include claims such as Nelloms's claim is erroneous. The Supreme Court indicated in *Schlup* that limiting the miscarriage-of- justice exception to cases of actual innocence strikes the proper balance between accommodating "the systemic interests in finality, comity, and conservation of judicial resources" along with "the overriding individual interest in doing justice in the extraordinary case." *Schlup*, 513 U.S. at 322 (internal quotation marks and citation omitted). Thus, the Supreme Court made clear that even a meritorious claim of constitutional violation would be insufficient to excuse procedural default absent evidence of actual innocence or cause and prejudice. *Id.* at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious

---

nor was it raised before the district court, and thus we will not address it. *See Seymour v. Walker*, 224 F.3d 542, 561 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001) (indicating that an appellate court should not consider habeas claims not raised before the district court).

7

constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."). We therefore conclude that the procedural default is not excused in this case and that the district court properly denied Nelloms's petition.

## III. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's judgment.