[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-13371

_____

D. C. Docket No. 01-00290-CV-4

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 26, 2006
THOMAS K. KAHN
CLERK

TROY ANTHONY DAVIS,

Petitioner-Appellant,

versus

WILLIAM TERRY, Warden,
Georgia Diagnostic Prison,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(September 26, 2006)

Before DUBINA, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

Troy Anthony Davis appeals the denial of his petition under 28 U.S.C.

§ 2254 for a writ of habeas corpus. Davis was convicted and sentenced to death

for crimes that occurred in two separate incidents on the same night. First, Davis

was convicted of shooting into a car on Cloverdale Drive in a subdivision of Savannah, Georgia. Michael Cooper, who was sitting in the front passenger seat of the car, was severely injured by a bullet that lodged in his right jaw. Davis was also convicted of striking Larry Young in the head with a gun later that night in a Savannah parking lot, and of fatally shooting police officer Mark Allen McPhail as McPhail responded to the altercation.

Davis' convictions and death sentence were affirmed by the Supreme Court of Georgia. Davis v. State, 426 S.E.2d 844 (Ga. 1993). His state habeas court petition for relief was denied in 1997, Davis v. Turpin, Civ. Action No. 94-V-162, Order of Sept. 5, 1997 (entered Sept. 9, 1997), and the Supreme Court of Georgia affirmed. Davis v. Turpin, 539 S.E.2d 129 (Ga. 2000). Davis then filed his federal habeas petition, whose denial by the district court is the subject of this appeal.

Davis' petition for habeas corpus is based essentially on his claim that newly discovered evidence indicates both that he did not receive a fair trial and that, under the standard set forth in Schlup v Delo, 513 U.S. 298 (1995), he is actually innocent of murdering Officer McPhail. In Schlup, the Supreme Court described two types of claims pertaining to actual innocence that might be made after trial. First, the Court addressed the substantive claim of actual innocence, as asserted in Herrera v. Collins, 506 U.S. 390 (1993), that execution of an innocent person

2

violates the Eighth Amendment *even if a conviction was the product of a fair trial*.[1]

Second, the Court recognized the procedural claim, asserted by Schlup, that conviction of an innocent person is constitutionally impermissible *when the conviction was the product of an unfair trial.* The Court held that when a death-sentenced prisoner makes a successful showing of actual innocence, procedural default alone cannot bar consideration of his constitutional claims of an unfair trial.

In this case, Davis does not make a substantive claim of actual innocence. Rather, he argues that his constitutional claims of an unfair trial must be considered, even though they are otherwise procedurally defaulted, because he has made the requisite showing of actual innocence under Schlup.[2] Specifically, Davis argues that:

---

[1] The viability of this claim remains an open question as the Court did not reach it, finding that Herrera had failed to make a "truly persuasive demonstration of 'actual innocence.'" Herrera, 506 U.S. at 417.

[2] To pass through the Schlup "gateway," a petitioner's new evidence must "establish sufficient doubt about his guilt to justify the conclusion that his execution would be a miscarriage of justice *unless* his conviction was the product of a fair trial." Schlup, 513 U.S. at 316 (emphasis in original). Establishing sufficient doubt of guilt does not, under Schlup, refer to the strict "clear and convincing" standard of Sawyer v. Whitley, 505 U.S. 333 (1992), but rather the lesser standard of Murray v. Carrier, 477 U.S. 478 (1986), which only requires a petitioner to "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 326-27. The Supreme Court painstakingly explained the terms of the Carrier/Schlup standard. First, a habeas court cannot reject a petitioner's claim "solely because" there remains "sufficient evidence to support the jury's verdict." Id. at 331. Instead, the court must "consider what reasonable triers of fact are likely to do." Id. at 330. The Court described a "reasonable" juror as one who fairly considers all of the evidence presented and conscientiously obeys the instructions of the trial court requiring proof beyond a reasonable doubt. See id. at 331. After articulating the appropriate standard, the Court remanded for an evidentiary hearing to determine "the probative force" and reliability "of the newly presented evidence in connection with the evidence of guilt adduced at trial." Id. at 332.

(1) The district court erred as a matter of law in declining to address Davis' claim of actual innocence by: (a) refusing to examine all of the evidence of his actual innocence; (b) reaching Davis' constitutional claims before considering the gateway issue of his actual innocence; (c) applying the standards of 28 U.S.C. § 2254(e)(2) to deny Davis an evidentiary hearing on the question of his actual innocence; and (d) failing to recognize that Davis has made a colorable showing of actual innocence.

(2) The State violated Davis' due process and fair trial rights by its knowing use of material false evidence and by withholding material exculpatory evidence.

(3) Trial counsel was constitutionally ineffective for failing to conduct adequate pretrial investigation and for ineffectively representing Davis at trial.

(4) Davis' trial was fraught with procedural and substantive errors, including Confrontation Clause violations, which in combination deprived him of a fundamentally fair trial as guaranteed under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.[3]

## DISCUSSION

Certainly, the threshold question in this case is whether Davis is entitled to consideration of his claims of an unfair trial when, as he concedes, those claims are

---

[3] We note at the outset that Davis provides no particular factual support for this claim other than a very brief assertion of a Confrontation Clause violation. Specifically, he challenges a single statement within Officer Lorenzo Brown's testimony regarding a shell casing that linked the murder of Officer McPhail to the Cloverdale shooting. Brown testified that he was given the casing by a homeless man who claimed to have found it "on the lawn of the trust company bank." On appeal, Davis complains that he did not have the opportunity to confront the homeless man, but he did not raise this argument in his habeas petition. The argument was not considered by the district court and will not be considered here. See Thomas v. Crosby, 371 F.3d 782, 800 (11th Cir. 2004) (Tjoflat, J., specially concurring) ("[A]ppellant's failure to press the argument before the district court foreclosed its right to present it on appeal." (quoting First Ala. Bank of Montgomery, N.A. v. First State Ins. Co., 899 F.2d 1045, 1060 n.8 (11th Cir. 1990) (internal quotation marks omitted)).

4

procedurally defaulted for failure to present them to the state court.[4] Davis

recognizes that, notwithstanding the procedural bar, the district court *did* consider

the merits of his constitutional claims and rejected them as a matter of law. He

nonetheless argues that the district court erred in declining to consider evidence of

his actual innocence and instead reached the merits of his constitutional claims.

Davis cannot prevail on this issue. As noted above, the procedural claim of actual

innocence under Schlup is permitted in order to assure consideration of

constitutional claims of an unfair trial where those claims have been procedurally

defaulted. Davis received precisely such substantive consideration. He cannot be

heard to complain that the test for achieving a desired result was not applied, or not

applied correctly, when the desired result was, in fact, obtained. Accordingly, we

now turn to the true gravamen of this appeal: the question of whether the district

---

[4] None of Davis' current claims of an unconstitutional trial were raised in the direct appeal of his conviction. Thus, the state habeas court ruled that they were waived and procedurally barred pursuant to Black v. Hardin, 336 S.E.2d 754, 754-55 (Ga. 1985). Because a federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment," Coleman v. Thompson, 501 U.S. 722, 729-30 (1991), this Court is likewise precluded from considering these constitutional claims. A petitioner may surmount this procedural bar in one of two ways. First, the petitioner's defaulted claims can be reviewed if he can show cause excusing the default and prejudice arising therefrom. See Dretke v. Haley, 541 U.S. 386, 392-93 (2004). Second, because "[t]he cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice[,]" id. at 393, a petitioner may still obtain review of his constitutional claims, even if he cannot show cause and prejudice, only if his case "implicat[es] a fundamental miscarriage of justice." Schlup, 513 U.S. at 314-15 (1995) (quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991)); Mincey v. Head, 206 F.3d 1106, 1136 (11th Cir. 2000). It would be considered a fundamental miscarriage of justice if "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup, 513 U.S. at 327 (quoting Murray, 477 U.S. at 496) (internal quotation marks omitted).

5

court erred in concluding that Davis' constitutional claims of an unfair trial, as he asserts them in this case, must be rejected as a matter of law.

Davis first argues that his constitutional right to a fair trial was violated because the State knowingly presented false testimony which had been coerced by the police to obtain his conviction. Specifically, Davis argues that the State violated his Fourteenth Amendment right to due process by offering material evidence that state agents knew to be coerced and false in violation of Giglio v. United States, 405 U.S. 150 (1972). Davis also argues that the State failed to provide him with exculpatory impeachment evidence of the coercive investigative tactics used to obtain the false testimony in violation of Brady v. Maryland, 373 U.S. 83 (1963). Additionally, Davis argues that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment, citing trial counsel's failure to investigate possible police coercion of witnesses, to interview critical eyewitnesses prior to trial, and to properly prepare for trial. We address each claim in turn.

I. *Giglio* Claim

Giglio error, a species of *Brady* error, occurs when "the undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury." Ventura v. Att'y Gen., Fla., 419 F.3d 1269, 1276-77 (11th Cir. 2005) (quoting United States v.

6

Agurs, 427 U.S. 97, 103 (1976)).  In order to prevail under Giglio, Davis must establish that: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material – i.e., that there is "any reasonable likelihood" that the false testimony "could . . . have affected the judgment."  Giglio, 405 U.S. at 154; see also Tompkins v. Moore, 193 F.3d 1327, 1339 (11th Cir. 1999).  Davis fails to meet this standard.

The only Giglio argument actually asserted in Davis' federal habeas petition (as opposed to his appeal brief) is that the prosecution knowingly presented the false testimony of Kevin McQueen and vouched for this allegedly false testimony.  But Davis fails to make any specific allegations tending to show that the government knew McQueen's statement to be false.  At trial, the State introduced McQueen's sworn statement that, when the two were inmates together, Davis confessed to the killing.  In his present affidavit McQueen asserts that he "made up the story about the confession" in order "to get even with" Davis after an argument.

But as the district court correctly stated:

> A showing of state misconduct requires, at a minimum, an allegation that the State presented McQueen's testimony while knowing it was false. McQueen's affidavit, accepted as truthful for the sake of argument, shows only that McQueen, on his own and prompted by no one else, sought to take out his anger against Petitioner by lying to a jail warden, by making a false statement to a police officer, and by lying to

7

the court and the jury when he testified that Petitioner confessed to shooting Officer McPhail. McQueen did not present the affidavit recanting his testimony until well after the trial had ended, and no evidence has been presented to indicate that the State knew that his trial testimony was false.

Based on this sole allegation regarding Kevin McQueen, Davis cannot support a Giglio claim as a matter of law.

Although not referenced in his habeas petition, Davis did attach to his petition the affidavits of other witnesses, which he now argues in his brief additionally support his Giglio claim. We have carefully reviewed these affidavits and conclude that, as a matter of law, they are insufficient to support a Giglio claim, either because the assertions contained therein do not rise to the level of coercive police conduct,[5] or because there is no reasonable likelihood that the false testimony could have affected the jury's judgment.[6] See United States v. Alzate, 47 F.3d 1103, 1110 (11th Cir. 1995).

II. *Brady* Claim

To prevail on his Brady claim, Davis would have to prove that: (1) the government possessed evidence favorable to him; (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence; (3) the

_____

[5] For example, the "coercion" alleged in some affidavits goes no further than being "told" by the police to sign a statement. In those affidavits, the affiant claims he did not read the statement at the time he signed it but now claims that its contents were false.

[6] For example, the allegation that D.D. Collins' interrogation was coercive was raised at trial and obviously did not impact the jury's finding of guilt.

government suppressed the favorable evidence; and (4) the evidence was material. LeCroy v. Sec'y, Fla. Dep't of Corr., 421 F.3d 1237, 1268 (11th Cir. 2005) (citing United States v. Meros, 866 F.2d 1304, 1308 (11th Cir. 1989)). Davis alleges that the State violated Brady by failing to disclose material exculpatory evidence concerning Dorothy Ferrell – namely, that Ferrell, who testified against Davis at trial, had contacted the district attorney's office regarding the possibility of a favorable disposition in an impending criminal action against her in exchange for her testimony in Davis' case. Davis says this omission was material because Ferrell's testimony was important in securing a guilty verdict against him.

At trial, Ferrell, who was staying in a hotel across the street from the murder scene, testified on behalf of the State. She identified Davis as the shooter after her memory was triggered by a picture of Davis on the seat of a police car. She then picked Davis out of a five-person photographic line up and identified Davis at trial.[7] After Ferrell testified, defense counsel's wife received a phone call from a person purporting to be Dorothy Ferrell saying that someone in the state attorney's office had told Ferrell they would help her if she testified in Davis' case, and that Ferrell's testimony at Davis' trial had been completely false. When defense counsel informed the state attorney of the phone call, the state attorney revealed Ferrell's written

---

[7] Ferrell now claims that the police did not present her with a photographic line-up, but simply showed her one photograph of Davis. However, as noted above, it was Ferrell herself who initially and voluntarily identified Davis as the shooter.

9

request for assistance in a criminal case in which she was a defendant. Her letter stated that if the prosecutor would help, "I promise you, you will not be making a mistake." Recalled by the judge to explain, Ferrell denied making the phone call. Though she admitted to writing the letter, she denied that the prosecutor helped her. The judge then offered, and defense counsel declined, to recall Ferrell to the stand.

Because it is clear that the defense was aware at trial of Ferrell's contact with the state attorney's office, there was no Brady violation. Moreover, this claim was presented to the state habeas court, which found that "there was 'no suppression of any understanding or agreement for prosecutorial leniency and no grounds for reversal.'" Because there was no clear and convincing evidence to the contrary, the district court accepted the state habeas court's finding of fact that there was no suppression of any understanding or agreement. Although the prosecution had an obligation to advise defense counsel of Ferrell's call, the state habeas court found that the omission was not material, citing the defense team's reason for not calling Ferrell back to testify once it found out about the call: "We weren't going to get very far with this witness, simply because we had fairly impeached her on the issue of shoplifting."

III. Ineffective assistance of counsel

Likewise, Davis cannot establish a successful claim of ineffective assistance of counsel. Davis essentially argues that his counsel was ineffective because:

1.	Counsel failed to contact Joseph Blige, who allegedly could have furnished evidence that Davis had no fight with anyone at the Cloverdale

10

party.

2. Counsel failed to ask defense witness Joseph Washington about the shirt that Red Coles was wearing, information that would have been exculpatory in light of other evidence presented to the jury.

3. Counsel failed to interview April Hester, who hosted the Cloverdale party and saw Red Coles acting "nervous and upset" soon after McPhail's shooting.

4. Counsel failed to effectively impeach Larry Young, Harriet Murray, Red Coles, and Stephen Sanders.

A successful claim under Strickland has "two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. 668, 687 (1984). Davis fails, as a matter of law, to meet this standard. His counsel's alleged instances of misconduct, even if true, do not add up to a performance so deficient that it deprived Davis of a fair trial. A review of the trial transcript reveals that Davis' counsel were fully prepared for trial and presented a viable defense: a case of mistaken identity. Counsel extensively cross-examined the State's witnesses to show that they were not trustworthy and to raise doubt about the witnesses' alleged observations of the shooting. Counsel also presented significant testimony that Red Coles was the

11

person who had committed the murder. Most importantly, none of the testimony which Davis asserts counsel should have obtained would overcome the prejudice requirement of <u>Strickland</u> in light of the totality of the evidence presented at trial.

Having very carefully considered this record, we cannot say that the district court erred in concluding that Davis has not borne his burden to establish a viable claim that his trial was constitutionally unfair.

**AFFIRMED.**