**Charles W. POLINSKI, Movant**

v.

**UNITED STATES of America, Respondent**

**Case No. 3:11CR190**

United States District Court, N.D. Ohio, Western Division.

Signed 12/30/2016

---

Duncan T. Brown, Office of the U.S. Attorney, Cleveland, OH, for Respondent.

Peter G. Rost, Kaplan, Richardson, Rost & Vincente, Toledo, OH, for Movant.

## ORDER

James G. Carr, Sr., U.S. District Judge

This is a federal prisoner's collateral attack under 28 U.S.C. § 2255.

In 2011, Charles Polinski pleaded guilty to being a felon in possession of a firearm, 18 U.S.C. § 922(g), possessing a machine gun, 18 U.S.C. § 922(*o* ), and unregistered manufacturing of a firearm, 26 U.S.C. § 5861(f).

As part of the plea agreement (Doc. 12 at ¶13), Polinski stipulated that he was subject to a four-level enhancement under United States Sentencing Guideline § 2K2.1(b)(4)(B), which applies if "any firearm ... had an altered or obliterated serial number." U.S.S.G. § 2K2.1(b)(4)(B).

At sentencing, I determined that Polinski's base offense level was twenty-nine and his criminal history was Category III. (Doc. 23 at 9–10, 16). This yielded a Guidelines range of between one-hundred and eight months and one-hundred and thirty-five months. (*Id.* at 9–10). I imposed a one-hundred-and-eight-month sentence. (Doc. 17 at 1).

Polinski did not take a direct appeal.

He now moves under § 2255 to vacate, set aside, or correct his sentence on the ground that trial counsel was ineffective. (Doc. 1).

According to Polinski, the § 2K2.1(b)(4)(B) enhancement was improper because the firearms at issue— several machine guns that Polinski made himself—never had serial numbers on them in the first place. (Doc. 19–1 at 4–7). For that reason, he argues, it was impossible for him to have "altered or obliterated" any serial numbers. He contends that counsel's unreasonable failure to object to the enhancement prejudiced him, in that the enhancement increased his Guidelines range from between 87 and 108 months to between 108 and 135 months.

Polinski also alleges that counsel ignored his request to file a notice of appeal. (*Id.* at 3).

The government opposes the motion on grounds that it is untimely and that counsel performed effectively under the guidelines of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## Discussion

■ "Section 2255 provides federal prisoners with a means to secure a second look at the legality of their conviction or sentence, beyond the direct appeal of right." *Braden v. U.S.*, 817 F.3d 926, 929 (6th Cir. 2016).

■ "The district court initially considers whether or not the petitioner is entitled to any § 2255 relief." *Id.* "If the court finds that petitioner's judgment was unlawful ... 'the court shall vacate and set the judgment aside.'" *Ajan v. U.S.*, 731 F.3d 629, 631 (6th Cir. 2013) (quoting 28 U.S.C. § 2255(b)). After vacating the judgment, the court must either "(1) discharge the prisoner, (2) resentence the prisoner, (3) grant a new trial, or (4) correct the sentence." *Id.*

### A. Statute of Limitations

Section 2255 motions are subject to a one-year statute of limitations. 28 U.S.C. § 2255(f).

■ The relevant starting date for the limitations period in this case is "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Ordinarily a judgment of conviction becomes final when the direct-appeal process concludes. *Johnson v. U.S.*, 457 Fed.Appx.

462, 464 (6th Cir. 2012). If the prisoner does not take a direct appeal, however, the judgment becomes final when the time to file a notice of appeal expires. *Sanchez–Castellano v. U.S.*, 358 F.3d 424, 426 (6th Cir. 2004)

I entered judgment on April 19, 2012. (Doc. 17). Polinski had until May 3, 2012 in which to file a notice of appeal, Fed. R. App. P. 4(b)(1)(B)(i), but he did not do so. Accordingly, Polinski's judgment of conviction became final on May 3, 2012, and his § 2255 motion was due one year later, on May 3, 2013.

Because Polinski did not file his motion until November 16, 2015, the motion is more than two-and-a-half years late.

In his pro se filings, Polinski argues that he is entitled to equitable tolling and, alternatively, that I should excuse his late filing because he is "actually innocent" of the conduct underlying the § 2K2.1(b)(4)(B) enhancement. (Doc. 19–1 at 2–3 & n.1; Doc. 29 at 3–4).[1]

Although I have given much thought to, and anticipate that I will resolve, the actual-innocence question, Supreme Court precedent requires that I first decide whether Polinski is entitled to equitable tolling. *Cf. Dretke v. Haley*, 541 U.S. 386, 393–94, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) ("a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default").

### B. Equitable Tolling

█ "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010).

### 1. Diligence

█ "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Id.* at 653, 130 S.Ct. 2549 (internal quotation marks and citations omitted). Based on the limited evidence in the record, this appears to be precisely the kind of diligence that Polinski exercised.

On May 21, 2012—little more than a month after sentencing—Polinski wrote to his attorney, Peter G. Rost, that he did not believe the § 2K2.1(b)(4)(B) enhancement applied in his case. "How can I get an altered or obliteration serial # enhancement," Polinski asked, "if I made [the firearms at issue] and there never was one." (Doc. 19–2 at 2).

"At any rate," he continued, I still want to appeal it like I told you at Court when I got sentenced." (*Id.*). He then asked counsel to send him any paperwork he needed "to start this appeal process." (*Id.*).

Polinski wrote to counsel again in November, 2012. "You are a hard man to reach," he told Rost, explaining that his wife had been trying, without success, to contact Rost. (*Id.* at 3). Polinski, who in the meantime had gathered "case law" that he wanted to discuss with Rost, asked Rost to "write me back and let me know my options" (*Id.*). "As you explained," he reminded counsel, "I only have one year to accomplish this." (*Id.*).

Polinski sent Rost another letter on June 16, 2013. Polinski, who recognized

---

1. Given the complexity of these questions and others that this case raises, I appointed Richard M. Kerger, esq., to represent Polinski. *Polinski v. U.S.*, 2016 WL 3033552 (N.D. Ohio 2016). I also appointed Professor Douglas Berman, of the Ohio State University's Moritz College of Law, as *amicus curiae*. (Doc. 37).

that he was now "past my one year mark," wrote that his father had at some point talked to Rost, who told the elder Polinski that "a motion was filed in February." (*Id.* at 4). He asked for an update and reiterated that, despite repeated efforts, neither he nor his family could make contact with Rost. (*Id.*). Polinski concluded by asking Rost to "send me my file on what you have on my case so I can do research." (*Id.*).

The next letter from Polinski to Rost that is in the record is dated April 12, 2014.

"What gives!," it begins:

I have been trying to reach you by letter, my family has been trying to reach you by phone. Your office has blocked my calls. If this is a matter of money, please tell me and I can have my family arrange to send you some money. I have case law that will defintely [*sic*] help my case but I am at a loss why you didn't object to the things I got enhanced for. My family wants to call the bar if you don't respond to my letter but I am giving you a chance because you have been a family friend for years and I need my file.

Please write me back as soon as possible.

(Doc. 19–2 at 5).

Rost wrote to Polinski, but not, it seems, until May 6, 2015—more than a year after the letter just discussed. (Doc. 19–2 at 6).

Rost explained that he had received Polinski's "recent letter" and that he would try to get "the information you requested from your file." (*Id.*). Rost was dubious about that prospect, however, because his "original office building [had been] closed by the City of Toledo" and he was not "certain what files still remain." (*Id.*). Rost then gave Polinski the names and contact information of two Toledo attorneys who handle criminal appeals and postconviction matters. He told Polinski that "I do not handle any appeals[.]" (*Id.*).

Rost wrapped up by explaining that he would search for the file "but it may well have been shredded at the time the Spitzer Building was closed and our office moved." (*Id.*). Rost indicated that if Polinski's "father or family member wants to contact me please have them call my office number and if I am not in they must leave their name and number and I will certainly return the call." (*Id.*).

Polinski replied to this letter on June 1, 2015. (Doc. 19–2 at 7).

He thanked Rost for responding, but reiterated that: 1) he had written "multiple letters to try and get my case file to argue my enhancement but you never answered them"; and 2) Rost "was suppose [*sic*] to appeal the sentence but you never did." (*Id.*).

Accepted at face value, these letters provide substantial evidence of Polinski's diligence.

From shortly after sentencing until mid–2015, Polinski pursued the enhancement issue through the person most likely to help: the attorney who had represented him when he pleaded guilty and at sentencing.

Yet Polinski did not merely write Rost letters and hope for the best. After he himself, and not Rost, discovered the enhancement claim, Polinski performed research from his prison cell and gathered case law to support his position. His motion includes ample citations to circuit cases supporting his position that § 2K2.1(b)(4)(B) enhancement does not apply if the firearms are, like the ones at issue in this case, homemade.

Left with no other recourse, and—at least based on the current record—having only one reply from Rost over three-and-a-half years, Polinski filed his § 2255 motion pro se in November, 2015.

■ Although I am inclined to find on the current record that Polinski exercised reasonable diligence under the circumstances, I will not make a definitive ruling on that issue now.

That is so because it is necessary to hold an evidentiary hearing to resolve the equitable-tolling claim. In particular, I need to know more about the attorney-client relationship between Rost and Polinski to determine whether, as Polinski alleges, Rost "abandoned" him, in which case "extraordinary circumstances" may have prevented Polinski from filing sooner.

### 2. Extraordinary Circumstances

■ Although a garden-variety claim of attorney negligence "does not generally give rise to equitable tolling," the Supreme Court has held that a 'serious instance[ ] of attorney misconduct' may rise to the level of an extraordinary circumstance necessary to justify equitable tolling." *Patterson v. Lafler*, 455 Fed.Appx. 606, 609–10 (6th Cir. 2012) (quoting *Holland v. Florida*, 560 U.S. 631, 652, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010)).

■ One type of serious misconduct that may warrant equitable tolling is attorney abandonment. *Maples v. Thomas*, 565 U.S. 266, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012) (recognizing that abandonment by counsel can excuse a procedural default); *Holland, supra*, 560 U.S. at 659, 130 S.Ct. 2549 (Alito, J., concurring in part and concurring in judgment) ("Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as an agent in any meaningful sense of that word."); *Patterson, supra*, 455 Fed.Appx. at 610.

■ As it presently stands, the record contains some evidence suggesting that Rost may have abandoned Polinski after sentencing.

First, Polinski alleges Rost did not file a notice of appeal, despite Polinski's instructions to do so. The government attempts to minimize the significance of this omission by pointing to Polinski's waiver, as part of his plea agreement, of his direct-appeal rights. It is my view, however, that in such circumstances Rost would have been obligated to follow his client's instructions to launch the appeal. *Cf. Roe v. Flores–Ortega*, 528 U.S. 470, 478, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) ("If counsel has consulted with the defendant" about taking an appeal, "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."). His failure to do so is therefore some evidence of abandonment.

Second, Polinski's letters accuse Rost of a repeated and long-standing failure to respond to his letters or provide him with information about his case that he requested. *Holland, supra*, 560 U.S. at 659, 130 S.Ct. 2549 (attorney abandonment was "evidenced by counsel's near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and requests over a period of several years").

Third, Rost allegedly made a false representation to Polinski's father that he filed a motion on Polinski's behalf in February, 2013—when some two-and-a-half months remained in the limitations period. (Doc. 19–2 at 4). That representation may have led Polinski to conclude that his § 2255 motion was already on file with this court, and that he need not act any further to protect his rights.

Finally, it was only in the letter of May 6, 2015 that Rost told Polinski that he did not handle appeals. That advice came a bit late in the day for Polinski, who had for several years relied on Rost to file a notice of appeal and, if not file the § 2255 motion,

at least provide him with some assistance in making his case.

But without Rost's side of the story, the record is necessarily incomplete. Accordingly, I must hold an evidentiary hearing to resolve the equitable-tolling issue.

### Conclusion

It is, therefore,

ORDERED THAT:

1. The court will hold an evidentiary hearing on Polinski's claim that he is entitled to equitable tolling;

2. This case is set for a telephonic status conference on January 3, 2017 at 8:30 a.m. The parties should be prepared to discuss:

   A. The scope of the hearing, what issues will be covered, what witnesses will testify, and what other evidence, if any, will be presented; and

   B. Whether, in the event the court decides that it can reach the merits of Polinski's ineffective-assistance claim, it would be prudent or necessary to take evidence on the merits of that claim at the upcoming hearing.

So ordered.