230 P.3d 181 (2010)
154 Wash.App. 907
In re Personal Restraint Petition of Ernest CARTER, Petitioner.
No. 37048-4-II.
Court of Appeals of Washington, Division 2.
March 9, 2010.
*182 Jeffrey Erwin Ellis, Ellis Holmes & Witchley PLLC, Seattle, WA, for Petitioner.
Michelle Luna-Green, Pierce Co. Pros. Attorney, Tacoma, WA, for Respondent.
ARMSTRONG, J.
¶ 1 Ernest Carter[1] contends in this personal restraint petition that his rights to due *183 process and a fair trial were violated during his 1998 trial on two counts of first degree robbery when he appeared in shackles visible to at least one juror. He also contends that his persistent offender sentence is unlawful because his California assault conviction is not comparable to a Washington "strike" offense. We agree that Carter's California assault is not a strike offense, therefore, we vacate Carter's persistent offender sentence and remand for resentencing. We reject the shackling challenge as untimely.

FACTS
¶ 2 When tried in Pierce County for first degree robbery in 1998, Carter had prior convictions in California and Oregon for assault with a firearm on a peace officer and attempted murder. Consequently, he was eligible for life imprisonment without the possibility of parole under the Persistent Offender Accountability Act (POAA), former RCW 9.94A.120 (1994), if found guilty of one or both robbery counts. On the first day of trial, the State noted for the record that Carter had chosen to wear shackles instead of a stun belt and that the parties had located a garbage can so that the jury could not see his restraints. Two days later, defense counsel asked to be heard during a recess. He informed the court that when his client was being taken out of the courtroom, a juror saw him shackled. The defense moved for a mistrial. A police officer explained that it was jail policy to apply leg restraints or a stun belt in three strikes cases. After confirming that the policy was legitimate because of the potential for escape, the trial court questioned the juror implicated.
¶ 3 The juror admitted to seeing Carter under escort but not in restraints, and he added that he had not discussed the matter with any other jurors. The juror volunteered, however, that he had seen Carter's leg restraints on the first day of voir dire. He denied saying anything about the restraints to his fellow jurors but added that the restraints "were plainly visible from where I was sitting in the pew there. I didn't think anything of it because it's rather common to have." Report of Proceedings (RP) at 355.
¶ 4 After the court excused the juror, the defense renewed its motion for a mistrial, contending that if one juror saw the shackles, others might have seen them, and adding that Carter had a constitutional right not to be seen in shackles. The court denied the motion. The jury convicted Carter on both counts. The trial court concluded that Carter's California assault and Oregon attempted murder convictions were comparable to most serious offenses in Washington and sentenced him to life in prison.
¶ 5 Carter appealed, and two of the issues he raised concerned his shackling and the comparability of his California conviction. In an unpublished opinion, this court held that Carter had not shown prejudice as a result of his shackling because a defendant is not prejudiced by his mere appearance in restraints during jury selection. State v. Carter, 100 Wash.App. 1028, 2000 WL 420660, at *5. Consequently, the trial court did not abuse its discretion in denying Carter's motion for a mistrial. This court also rejected Carter's contention that his California assault conviction was comparable to third degree assault of a police officer in Washington and thus not a most serious offense. Carter, at *12-13.
¶ 6 Carter petitioned the Washington Supreme Court for review, arguing that his California assault conviction was not comparable to Washington's assault statute because the California statute did not require the specific intent the Washington statute required. Our Supreme Court denied his petition for review, and we issued our mandate on October 18, 2000. When Carter filed a habeas petition raising the comparability issue, a federal district court dismissed it as procedurally barred on March 29, 2002.
¶ 7 Carter filed this personal restraint petition on October 3, 2007. He again seeks relief on the shackling and comparability issues.

ANALYSIS

I. Timeliness
¶ 8 Personal restraint procedure has its origins in the state's habeas corpus *184 remedy. In re Pers. Restraint of Hagler, 97 Wash.2d 818, 823, 650 P.2d 1103 (1982). Fundamental to the nature of habeas corpus relief is the principle that the writ will not serve as a substitute for appeal. Hagler, 97 Wash.2d at 823, 650 P.2d 1103. A personal restraint petition, like a petition for a writ of habeas corpus, is not a substitute for an appeal. Hagler, 97 Wash.2d at 824, 650 P.2d 1103. On collateral review, the burden is on the petitioner to establish either constitutional error that caused actual and substantial prejudice to his case or nonconstitutional error resulting in a complete miscarriage of justice. In re Pers. Restraint of Cook, 114 Wash.2d 802, 810-12, 792 P.2d 506 (1990).
¶ 9 Personal restraint petitions generally are prohibited if not filed within one year after the judgment and sentence becomes final. RCW 10.73.090(1). The petitioner bears the burden of proving that an exception to the RCW 10.73.090 statute of limitation applies. State v. Schwab, 141 Wash.App. 85, 90, 167 P.3d 1225 (2007), review denied, 164 Wash.2d 1009, 195 P.3d 86 (2008), cert. denied, ___ U.S. ___, 129 S.Ct. 1348, 173 L.Ed.2d 614 (2009).
¶ 10 Carter filed his petition almost seven years after his judgment and sentence became final. See RCW 10.73.090(3)(b) (judgment and sentence becomes final when this court files its mandate disposing of direct appeal). He claims, however, that his petition is exempt from the time limit because he did not receive notice of the one-year statute of limitation from the trial court. See RCW 10.73.110 (trial court shall advise defendant of one-year statute of limitation when it pronounces judgment and sentence). When a statute requires notice, the failure to comply creates an exemption to the time bar. In re Pers. Restraint of Vega, 118 Wash.2d 449, 451, 823 P.2d 1111 (1992).
¶ 11 After hearing oral argument, we remanded for a reference hearing on the notice issue. The superior court found that the sentencing court did not orally inform Carter of his collateral attack rights at any time during sentencing and that Carter did not receive a copy of the "Advice of Collateral Attack Time Limit" form filed in his case until 2007. Findings of Fact 3, 8, 11. The superior court also found, however, that Carter received a copy of his judgment and sentence at sentencing and from his habeas attorney in 2002. Carter argues that the finding stating that he received a copy of his judgment and sentence at sentencing lacks evidentiary support. He contends further that he did not read the page of his judgment and sentence containing the collateral attack information when he received it in 2002, and that even if he did, the language was insufficient to provide him proper notice.
¶ 12 We need not review the evidence supporting the challenged finding. Even if the superior court incorrectly found that Carter received a copy of his judgment and sentence at sentencing, Carter acknowledges receiving a copy in 2002. Carter's judgment and sentence states that "[p]ursuant to RCW 10.73.090 and RCW 10.73.100, the defendant's right to file any kind of post sentence challenge to the conviction or the sentence may be limited to one year." Petition, App. A, at 7. Carter claims that he did not read this information until 2007, but receipt of the judgment and sentence is sufficient to constitute notice. See In re Pers. Restraint of Runyan, 121 Wash.2d 432, 453 n. 16, 853 P.2d 424 (1993) (sentencing documents containing notice of time limit are sufficient to meet State's burden of showing notice); State v. Robinson, 104 Wash.App. 657, 661, 669-70, 17 P.3d 653 (2001) (statement in judgment and sentence that any collateral attack on the judgment would be subject to RCW 10.73.090 and RCW 10.73.100 was sufficient to give defendant notice of one-year statute of limitation applicable to collateral attacks). Insofar as Carter challenges the language in the judgment and sentence, we find it sufficient to convey the requisite notice. Robinson, 104 Wash.App. at 669-70, 17 P.3d 653; see also Payne v. Mount, 41 Wash. App. 627, 635, 705 P.2d 297 (1985) (holding that a notice citing the relevant statute for appeal time limit was adequate under due process). Having received notice of the one-year time limit in 2002, Carter's petition is untimely unless he can establish that an exception to that time limit applies.

*185 II. Shackling
¶ 13 Carter argues that a recent change in the law justifies this court's reconsideration of the shackling issue. See RCW 10.73.100(6) (time limit does not apply to petition if significant change in the law is material to the conviction or sentence and applies retroactively).
¶ 14 A defendant in a criminal case is entitled to appear at trial free from all bonds or shackles except in extraordinary circumstances. State v. Finch, 137 Wash.2d 792, 842, 975 P.2d 967 (1999). Generally, when a jury views a shackled defendant, that defendant's constitutional right to a fair and impartial trial is impaired. State v. Elmore, 139 Wash.2d 250, 273, 985 P.2d 289 (1999). In rejecting Carter's appeal, however, we stated that when the jury's view of a defendant in shackles is brief or inadvertent, the defendant must make an affirmative showing of prejudice. Carter, at *5 (citing Elmore, 139 Wash.2d at 273, 985 P.2d 289). Because Carter failed to show any prejudice resulting from his appearance in restraints during jury selection, the trial court did not abuse its discretion in denying his motion for a mistrial. Carter, at *5.
¶ 15 Carter now argues that the United States Supreme Court changed the legal standard to apply in assessing the potential harm from shackling in Deck v. Missouri, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005). Deck held that where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the sentencing jury, the defendant need not demonstrate actual prejudice to make out a due process violation. Deck, 544 U.S. at 635, 125 S.Ct. 2007. Rather, the State must prove beyond a reasonable doubt that the shackling error did not contribute to the verdict. Deck, 544 U.S. at 635, 125 S.Ct. 2007. According to Carter, the Deck decision thus changed the harmless error standard applicable to shackling issues. Instead of placing the burden on the defendant to prove prejudice, the burden is on the State to prove an absence of prejudice. Carter contends that this change in the law applies retroactively to his case.
¶ 16 Deck applied clearly established law relevant to the guilt phase of a trial to the capital sentencing context. Lakin v. Stine, 431 F.3d 959, 963 (6th Cir.2005). Prior Supreme Court precedent did not involve the penalty phase of a capital trial but involved only shackling before a determination of guilt. Marquard v. Sec'y for the Dep't of Corrs., 429 F.3d 1278, 1311 (11th Cir.2005). Insofar as Deck changed the law applicable to the penalty phase of a trial, it does not apply retroactively. Marquard, 429 F.3d at 1311-12.
¶ 17 Thus, under federal law, Deck imposes a new rule applicable to the penalty phase of a trial that is not retroactive. Consequently, it did not significantly change the law material to Carter's conviction. See RCW 10.73.100(6). Furthermore, we noted in 2002 that although a claim of unconstitutional shackling is subject to harmless error analysis, it is unclear whether shackling in the courtroom creates a presumption of prejudice that the State must overcome or whether the defendant must demonstrate that the shackling was prejudicial. State v. Jennings, 111 Wash.App. 54, 61, 44 P.3d 1 (2002). To illustrate, Jennings cited Washington Supreme Court decisions issued in 2001 and 1984 that placed the burden on the State, and other decisions from the same court issued in 1999 and 1998 that placed the burden on the defendant. Jennings, 111 Wash.App. at 61 n. 2 & 3, 44 P.3d 1. Thus, Carter could have raised in his direct appeal, his petition for review, or a personal restraint petition filed before Deck, the same point of law he raises now. Carter does not succeed in showing that a significant change in the law renders the shackling issue exempt from the one-year bar. See In re Pers. Restraint of Lavery, 154 Wash.2d 249, 258-59, 111 P.3d 837 (2005) (one test to determine whether intervening case represents a significant change in the law is whether the defendant could have argued this issue before publication of the decision). Because he does not argue that any other exception applies to this issue, we do not discuss it further.

III. Sentencing

A. Time Bar

¶ 18 Under the "mixed petition" rule, a court may not consider a petition filed *186 after the one-year deadline where only some of the issues fall within an exception in RCW 10.73.100. See In re Pers. Restraint of Hankerson, 149 Wash.2d 695, 702, 72 P.3d 703 (2003) (court will not decide claims under RCW 10.73.100 that are not time barred if some issues are untimely). Where a remaining issue rests on a different exception, however, it may be reached. See In re Pers. Restraint of Stoudmire, 141 Wash.2d 342, 350-51, 5 P.3d 1240 (2000) (court can decide facial invalidity claims after dismissing untimely claims). We therefore address Carter's sentencing issue because recent case law demonstrates that he is actually innocent of the life sentence he received.[2]

B. Actual Innocence Exception

¶ 19 Carter argues that the one-year time limit in RCW 10.73.090 should be tolled under the "actual innocence" exception. The federal courts have applied this exception under limited circumstances to grant habeas relief where review ordinarily would be barred because of a procedural default in state court. See Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 170 (2nd Cir.2000). In an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a writ of habeas may be granted even in the absence of a showing of cause for the procedural default. Murray v. Carrier, 477 U.S. 478, 495-96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The Supreme Court has "transported" the actual innocence concept to the sentencing phase of capital trials, and some lower federal courts have applied it to noncapital sentencing as well. Spence, 219 F.3d at 170-71 (citing Smith v. Murray, 477 U.S. 527, 537-38, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986)); see also United States v. Mikalajunas, 186 F.3d 490, 495 (4th Cir.1999) (limiting actual innocence exception in noncapital cases to review of eligibility for career offender or other habitual offender guideline provisions); United States v. Maybeck, 23 F.3d 888, 892-94 (4th Cir.1994) (holding that defendant was actually innocent of being career offender because his predicate offenses did not qualify him for that status). The Supreme Court has not addressed whether the actual innocence exception can be applied to sentencing outside the capital context, and this question has divided the Courts of Appeals. See Dretke v. Haley, 541 U.S. 386, 392-93, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (recognizing divergence of opinion in Courts of Appeals regarding availability of exception in noncapital sentencing context but declining to reach issue); see also United States v. Richards, 5 F.3d 1369, 1371 (10th Cir.1993) (person cannot be actually innocent of a noncapital sentence).
¶ 20 The Eighth Circuit applied the actual innocence exception where a defendant was sentenced under a habitual offender statute that was not in effect when he committed his offenses. Jones v. Arkansas, 929 F.2d 375, 380-81 (8th Cir.1991). This application allowed him to obtain relief in a habeas corpus proceeding even though he had not raised the same claim of error previously in state court. The Jones court cited the United States Supreme Court's statement, in the capital sentencing context, that if one is "actually innocent" of the sentence imposed, a federal habeas court can excuse a procedural default to correct a fundamentally unjust incarceration. Jones, 929 F.2d at 381 (citing Smith, 477 U.S. at 537, 106 S.Ct. 2661). "It would be difficult to think of one who is more `innocent' of a sentence than a defendant sentenced under a statute that by its very terms does not even apply to the defendant." Jones, 929 F.2d at 381 (emphasis in original). The court concluded that manifest injustice would occur if it were to adhere rigidly to the procedural default rule. Jones, 929 F.2d at 381 n. 16; see also Smith v. Collins, 977 F.2d 951, 959 (5th Cir.1992) (assuming without deciding that actual innocence exception applies to noncapital sentencing procedures; such application would require defendant to show that, absent alleged error, he would not have been legally eligible for his sentence).
*187 ¶ 21 The Washington Supreme Court has recognized that the actual innocence exception is "`extremely rare'" and applicable in "`extraordinary case[s].'" In re Pers. Restraint of Turay, 153 Wash.2d 44, 55, 101 P.3d 854 (2004) (quoting Schlup v. Delo, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). The court declined to apply it to excuse Turay's failure to raise an issue in a previous petition, finding that there was no issue of innocence to consider because Turay, who was civilly committed as a sexually violent predator, was not confined for a criminal conviction. Turay, 153 Wash.2d at 56, 101 P.3d 854. Turay's claim that he was confined in violation of due process was insufficient to find an exception under state law comparable to the actual innocence exception under federal law. Turay, 153 Wash.2d at 56, 101 P.3d 854. "Instead, to avoid dismissal of this petition on abuse of the writ grounds, he must, at the least, show that when the State confined him he was not presently dangerous. He has not done so." Turay, 153 Wash.2d at 56, 101 P.3d 854. Thus, the Turay court did not reject the actual innocence exception completely but declined to apply it where the petitioner failed to prove that he was actually innocent of his sexually violent predator status.
¶ 22 We recognize that neither Turay nor the federal decisions cited above address the actual innocence exception in the context presented here; that is, where the petition is otherwise untimely. But see Souter v. Jones, 395 F.3d 577, 599 (6th Cir.2005) (actual innocence exception applies to one-year limitation period for habeas corpus petitions). We also recognize that none of these decisions apply the actual innocence exception to an untimely petition raising a sentencing challenge. All of these decisions deal with procedural bars, however, and the one-year statute of limitation in RCW 10.73.090 is a procedural, rather than jurisdictional, bar that may be overcome in certain instances. See State v. Littlefair, 112 Wash.App. 749, 757-59, 51 P.3d 116 (2002) (RCW 10.73.090 is statute of limitation, or procedural bar, to which equitable tolling may apply). Our Supreme Court has allowed equitable tolling of the one-year statute of limitation where the filing of a timely petition was barred by bad faith, deception, or false assurances. In re Pers. Restraint of Bonds, 165 Wash.2d 135, 141, 196 P.3d 672 (2008). In so holding, the court reasoned that equitable tolling permits a court to allow an action to proceed when justice requires it, even though a statutory time period has passed. Bonds, 165 Wash.2d at 141, 196 P.3d 672.
¶ 23 Carter makes no showing of bad faith, deception, or false assurances and thus cannot take advantage of the equitable tolling exception heretofore established under Washington law. We apply the exception here based on our conclusion, explained below, that Carter is "actually innocent" of his persistent offender status. We emphasize that this exception applies only in extremely rare instances, as where a petitioner is "actually innocent" of his persistent offender status.[3] Justice requires, however, that we apply the actual innocence exception in this instance to overcome the one-year statute of limitation in RCW 10.73.090.

C. Comparability Analysis

¶ 24 To determine whether a foreign conviction should count as a strike offense, the court employs a two-part comparability analysis. State v. Johnson, 150 Wash. App. 663, 676, 208 P.3d 1265, review denied, 167 Wash.2d 1012, 220 P.3d 208 (2009). The court first determines whether the elements of the foreign offense are substantially similar to the Washington offense. Johnson, 150 Wash.App. at 676, 208 P.3d 1265. If the elements of the foreign offense are broader, the court must determine whether the offense is factually comparable; i.e., whether the conduct underlying the foreign offense would have violated the comparable Washington statute. Johnson, 150 Wash.App. at 676, 208 P.3d 1265. If a factual analysis is necessary, the court considers only facts admitted or stipulated by the defendant, or *188 proved beyond a reasonable doubt. Johnson, 150 Wash.App. at 676, 208 P.3d 1265. If a foreign conviction is neither legally nor factually comparable, it does not count as a most serious offense under the POAA. Johnson, 150 Wash.App. at 677, 208 P.3d 1265.
¶ 25 There is no dispute that Carter's Oregon convictions for attempted murder and attempted first degree assault counted as a strike offense.[4] When we previously assessed the comparability of his 1983 California conviction for assault on a peace officer with a firearm, we first looked to the underlying facts. In a type of Newton plea[5] in which Carter agreed to the use of what in Washington would be an affidavit of probable cause, Carter accepted that the facts would show that he shot at a police car as it was driving away after his brother's arrest. We then turned to the 1983 California statute defining the crime of assault with a firearm on a peace officer:
Every person who commits an assault with a firearm upon the person of a peace officer. . . and who knows or reasonably should know that the victim is a peace officer . . . engaged in the performance of his or her duties, when the peace officer. . . is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for four, six, or eight years.
Former Cal.Penal Code § 245(c) (Deering 1983). California defines assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal.Penal Code § 240 (Deering 1983).
¶ 26 In 1983, Washington law defined the offense of second degree assault with a weapon as follows:
Every person who, under circumstances not amounting to assault in the first degree shall be guilty of assault in the second degree when he . . . [s]hall knowingly assault another with a weapon or other instrument or thing likely to produce bodily harm.
Former RCW 9A.36.020(1)(c) (1983), repealed by Laws of 1986, ch. 257, § 9. Washington defines assault as "`an attempt, with unlawful force, to inflict bodily injury upon another, accompanied with apparent present ability to give effect to the attempt if not prevented.'" Carter, at *12 (quoting State v. Jimerson, 27 Wash.App. 415, 418, 618 P.2d 1027 (1980)). We reasoned that the 1983 Washington offense most comparable to Carter's California assault was second degree assault because both offenses shared the common element of assault with a dangerous weapon. Carter, at *13.
¶ 27 Other Washington decisions have held that California assault convictions are comparable to first or second degree assault in Washington and thus count as strike offenses. See, e.g., State v. Wheeler, 145 Wash.2d 116, 119, 34 P.3d 799 (2001) (conviction of assault with a firearm in California is equivalent to assault with a deadly weapon in Washington); State v. Berry, 141 Wash.2d 121, 132, 5 P.3d 658 (2000) (stayed California convictions for assault with intent to commit murder and assault with a deadly weapon counted as strikes under the POAA). These opinions did not discuss the fact that assault in California is a general intent crime while assault in Washington is a specific intent offense.
¶ 28 Specific intent to either create apprehension of bodily harm or cause bodily harm is an essential element of second degree assault in Washington. State v. Byrd, 125 Wash.2d 707, 713, 887 P.2d 396 (1995); State v. Welsh, 8 Wash.App. 719, 724, 508 P.2d 1041 (1973). Therefore, the defense of intoxication is available to a defendant charged with that offense. Welsh, 8 Wash. App. at 723, 508 P.2d 1041. Assault in California requires only the general intent to willfully commit an act, the direct, natural and probable consequences of which, if successfully completed, would be the injury to *189 another. People v. Colantuono, 7 Cal.4th 206, 214, 26 Cal.Rptr.2d 908, 865 P.2d 704 (1994). Although the defendant must intentionally engage in conduct that will likely produce injurious consequences, the prosecution need not prove a specific intent to inflict a particular harm. Colantuono, 7 Cal.4th at 214, 26 Cal.Rptr.2d 908, 865 P.2d 704. The intent to cause any particular injury, to severely injure another, or to injure in the sense of inflicting bodily injury is not necessary. Colantuono, 7 Cal.4th at 214, 26 Cal. Rptr.2d 908, 865 P.2d 704. Consequently, a jury may not consider evidence of the defendant's intoxication in determining whether he committed assault in California. People v. Williams, 26 Cal.4th 779, 788, 111 Cal. Rptr.2d 114, 29 P.3d 197 (2001).
¶ 29 Carter rests his argument on the different intent elements and points out that our Supreme Court found this distinction dispositive in In re Pers. Restraint of Lavery, 154 Wash.2d 249, 111 P.3d 837 (2005). At issue was whether Lavery's federal conviction for bank robbery was comparable to the Washington crime of second degree robbery and counted as a strike under the POAA. The court held that the two offenses are not legally comparable because the crime of federal bank robbery is a general intent crime and the crime of second degree robbery in Washington requires specific intent to steal as an essential, nonstatutory element. Lavery, 154 Wash.2d at 255-56, 111 P.3d 837. The Washington definition thus was narrower than the federal crime's definition. A person could be convicted of federal bank robbery without being guilty of second degree robbery in Washington because of the defenses that would be available only to a specific intent crime, including the defense of intoxication. Lavery, 154 Wash.2d at 256, 111 P.3d 837.
¶ 30 The court then turned to the factual comparability of the federal and state offenses. Where the foreign statute is broader than Washington's, a factual comparison may not be possible because there may have been no incentive for the accused to have attempted to prove that he did not commit the broader offense. Lavery, 154 Wash.2d at 258, 111 P.3d 837. Lavery would have had no motivation in the earlier conviction to pursue defenses that would have been available to him under Washington's robbery statute but unavailable in the federal prosecution. Lavery, 154 Wash.2d at 258, 111 P.3d 837. "Furthermore, Lavery neither admitted nor stipulated to facts which established specific intent in the federal prosecution, and specific intent was not proved beyond a reasonable doubt in the 1991 federal robbery conviction." Lavery, 154 Wash.2d at 258, 111 P.3d 837. Therefore, his federal robbery conviction was neither legally nor factually comparable to Washington's second degree robbery and was not a strike under the POAA. Lavery, 154 Wash.2d at 258, 111 P.3d 837.
¶ 31 Carter's California assault is not legally comparable to second degree assault in Washington because of the different intent elements. In assessing factual comparability, we observe that Carter merely conceded that the facts were sufficient to convict him of assault of a peace officer with a firearm in California. The facts were silent as to Carter's state of mind during the shooting, and Carter had no incentive to introduce any such facts. The facts do not show that Carter acted with the specific intent to injure a police officer or create an apprehension of injury. Consequently, under the reasoning in Lavery, Carter's California assault is not comparable to second degree assault in Washington and should not have been counted as a strike. Carter is "actually innocent" of being a persistent offender.[6]
¶ 32 Although we reject Carter's shackling challenge as untimely, we vacate Carter's persistent offender sentence and remand for resentencing.
I concur: HOUGHTON, J.
PENOYAR, A.C.J.
¶ 33 Relying on the federally-created actual-innocence doctrine, the majority finds this *190 case comparable to "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Majority at 186. (citing Murray v. Carrier, 477 U.S. 478, 495-96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). I disagree that this is such a case.
¶ 34 I agree with the majority's analysis that it is impossible to determine the factual comparability of Carter's California assault conviction with a Washington second degree assault conviction. But to say this means that Carter is actually or even probably innocent of having had two strikes in 1998 seems to me to be a bridge too far. What we do know from common sense and experience is that it is quite likely that someone firing a gun at a police car is intending to harm the police officer in the vehicle. While a petitioner who can affirmatively demonstrate actual innocence could well succeed, Carter has not shown that he lacked the requisite intent and that his offense is therefore not factually comparable.
¶ 35 Carter has not shown, and the burden is his, that the one-year time bar should not apply to him. RCW 10.73.090. To hold otherwise, as the majority does, is to employ an exception for "extremely rare instances" in which the petitioner is "actually innocent" to a case where there is no such showing, rather only an inadequate record to review the claimed error. Majority at 12. Opening the door to cases in which the exception is rooted in the record's weakness and not on actual innocence not only ignores the exception's purpose of providing relief to those actually innocent without legal recourse but will invite a flurry of cases where defendants pleaded guilty to strike offenses in other states before committing their last strike here. I would deny the petition.
NOTES
[1] Carter changed his name to Le'Taxione after his conviction. Because his court documents use his former name, this opinion does so as well.
[2] Because of the mixed petition rule and our holding that Carter's shackling issue does not satisfy the exception in RCW 10.73.100(6), we do not address his arguments that the sentencing issue can be considered under RCW 10.73.100(5) and (6). The exception in RCW 10.73.100(5) applies if the sentence imposed exceeded the trial court's jurisdiction.
[3] To the extent that Carter's argument is successive, the ends of justice clearly warrant reconsideration of this issue. See In re Pers. Restraint of Jeffries, 114 Wash.2d 485, 487, 789 P.2d 731 (1990) (argument rejected on merits in direct appeal will not be re-evaluated in personal restraint petition unless ends of justice are served thereby).
[4] Because the Oregon convictions occurred at the same time, they constituted only one most serious offense. See former RCW 9.94A.030(25)(b) (1994).
[5] When a defendant enters a Newton plea, he does not admit guilt but acknowledges that the State has enough evidence to find him guilty. State v. Newton, 87 Wash.2d 363, 552 P.2d 682 (1976).
[6] Having granted Carter sentencing relief under the actual innocence exception, we do not address his alternative claim for relief under facial invalidity exception. In re Pers. Restraint of Banks, 149 Wash.App. 513, 517, 204 P.3d 260 (2009) (one-year time limit does not apply to judgment and sentence that is invalid on its face).