[No. 84606-5.   En Banc.]
Argued May 10, 2011.     Decided October 20, 2011.

*In the Matter of the Personal Restraint of* ERNEST A. CARTER, *Respondent.*

918

*Mark E. Lindquist, Pierce County Prosecuting Attorney,* and *Melody M. Crick, Deputy,* for petitioner State.

*Jeffrey E. Ellis* (of *Oregon Capital Resource Center*), for respondent Carter.

¶1 FAIRHURST, J. — The State appeals the reversal of Ernest A. Carter's[1] sentence. The Court of Appeals applied the actual innocence doctrine to hear Carter's untimely personal restraint petition (PRP) and held that Carter was erroneously sentenced as a persistent offender under the Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981, chapter 9.94A RCW. We reverse and remand because the Court of Appeals erroneously applied the actual innocence doctrine to hear Carter's untimely PRP prior to considering Carter's other claimed exceptions to the time bar in RCW 10.73.090.

## FACTS AND PROCEDURAL POSTURE

¶2 In 1998, the Pierce County Superior Court entered a judgment and sentence convicting Carter on two counts of robbery in the first degree and sentencing him as a persistent offender to life in prison. Carter's prior offenses included a 1983 California conviction for assault with a firearm on a police officer and a 1990 Oregon conviction for attempted murder.

¶3 Carter timely filed a direct appeal raising nine issues, including a claim that his prior California assault conviction was not comparable to a Washington strike offense under the POAA and should not have been counted toward his persistent offender sentence. The Court of Appeals affirmed the conviction in an unpublished opinion. *State v. Carter*, noted at 100 Wn. App. 1028, 2000 WL 420660, at *13, 2000 Wash. App. LEXIS 595, at *44. Carter petitioned for review, raising only the comparability issue, and we denied review. *State v. Carter*, 141 Wn.2d 1026, 11 P.3d 824 (2000). The Court of Appeals issued the mandate on October 18, 2000. Carter then sought habeas relief in federal court, but his petition was dismissed as procedurally barred in March 2002.

---

[1] Carter changed his name to Le'Taxione after his conviction. Because his court documents use his former name, this opinion does as well.

¶4 In 2007, almost seven years after the mandate, Carter filed this PRP, arguing that his due process rights were violated during his 1998 trial when he appeared in shackles and that his persistent offender sentence was unlawful because his California assault conviction was not comparable to a Washington strike offense. Carter offers various reasons why his claims are not time barred. For both claims, he argues he did not receive notice of the one-year time bar. For shackling, Carter argues there was a significant change in the law (RCW 10.73.100(6)). For comparability, Carter argues (1) there had been a significant change in the law (RCW 10.73.100(6)), (2) the sentence imposed was in excess of the court's jurisdiction (RCW 10.73.100(5)), (3) Carter's judgment and sentence was facially invalid (RCW 10.73-.090(1)), (4) equitable tolling under Washington common law warranted review, and (5) the federal actual innocence doctrine warranted review.

¶5 The Court of Appeals dismissed Carter's shackling claim as untimely, applied the actual innocence doctrine to the comparability issue, declined to address his alternative claims for relief, vacated Carter's persistent offender sentence, and remanded for resentencing on the comparability issue. *In re Pers. Restraint of Carter*, 154 Wn. App. 907, 916, 920, 924 n.6, 925, 230 P.3d 181 (2010). The State petitioned for review, challenging both the adoption of the actual innocence doctrine, as well as the court's conclusion that Carter has made a sufficient showing of actual innocence.

¶6 Carter opposed the State's petition and cross petitioned for review, raising all previously argued exceptions to the time bar regarding his comparability claim and seeking review of the Court of Appeals' denial of his shackling claim. Carter also requested release pending review under RAP 16.15(b). We granted review of the State's motion for discretionary review, denied Carter's cross motion for discretionary review, and denied Carter's motion for release. *In re Pers. Restraint of Carter*, 170 Wn.2d 1001, 245 P.3d 226 (2010). Therefore, we review only

whether the Court of Appeals erred by applying the actual innocence doctrine to hear Carter's untimely PRP.

## ISSUE

¶7 Did the Court of Appeals err by applying the actual innocence doctrine to Carter's untimely PRP, where Carter claims he is actually innocent of a persistent offender sentence because his prior foreign offenses are not comparable to Washington strike offenses?

## ANALYSIS

¶8 The State argues that the Court of Appeals erred when it applied the actual innocence doctrine to avoid the time bar to Carter's untimely PRP. PRPs are not a substitute for a direct appeal, and the availability of collateral relief through a PRP is limited. *In re Pers. Restraint of Grasso*, 151 Wn.2d 1, 10, 84 P.3d 859 (2004). A PRP filed more than one year after the judgment becomes final is time barred. RCW 10.73.090. However, PRPs are exempt from this time bar if the judgment and sentence is invalid on its face or was otherwise rendered by a court lacking jurisdiction. *Id.* In addition to these two exemptions, the legislature has provided six exceptions to the time bar. RCW 10.73.100. In general terms, these exceptions apply when a petitioner (1) raises newly discovered evidence, (2) is convicted under an unconstitutional statute, (3) is convicted in violation of double jeopardy, (4) pleads not guilty when the evidence was insufficient to convict, (5) is sentenced in excess of the court's jurisdiction, and (6) has a sentence that is materially impacted by a significant change in the law. RCW 10.73.100. Although Carter's PRP was filed more than one year after his judgment and sentence became final, the Court of Appeals held that Carter's PRP was not time barred. *Carter*, 154 Wn. App. at 920. Instead of relying on one of the above exemptions or exceptions, the Court of Appeals applied the federal habeas corpus doctrine of actual innocence to evade the time bar. *Id.*

*Actual Innocence Doctrine*

¶9 The roots of the actual innocence doctrine are found "in the general principle that federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds." *Dretke v. Haley,* 541 U.S. 386, 392, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004). Ordinarily, a habeas applicant must show cause and prejudice in order to avoid such state procedural bars to collateral attack. *Id.* at 393. This required showing has at times resulted in an imperfect safeguard against fundamental miscarriages of justice. *Id.* Therefore, the Supreme Court recognized the actual innocence doctrine as a "narrow exception" to state procedural bars in cases where a fundamental miscarriage of justice would otherwise result if the collateral attack is dismissed. *Id.* at 388, 393.

¶10 The actual innocence doctrine requires that the habeas applicant "demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense or, in the capital sentencing context, of the aggravating circumstances rendering the inmate eligible for the death penalty." *Id.* at 388 (citing *Murray v. Carrier,* 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *Sawyer v. Whitley,* 505 U.S. 333, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992)). The applicable test differs depending on the nature of the habeas applicant's innocence claim. If the petitioner is raising a freestanding constitutional claim, namely, that execution of an innocent person would violate the Eighth Amendment to the United States Constitution, then federal habeas relief may be available only where there is "no state avenue open to process such a claim" and the petitioner can meet the "extraordinarily high" burden of showing actual innocence. *Herrera v. Collins,* 506 U.S. 390, 417, 113 S. Ct. 853, 122 L.

Ed. 2d 203 (1993). Alternatively, where the petitioner is alleging actual innocence to avoid a procedural bar that prevents judicial review of an alleged constitutional error, the petitioner's claim of actual innocence takes the form of a "gateway" actual innocence claim. *Schlup v. Delo*, 513 U.S. 298, 314, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).

¶11 Carter argues that he is actually innocent of being a persistent offender, so the time bar in RCW 10.73.090 should not bar his PRP challenging the comparability of his California assault conviction to a Washington strike offense. Carter's claim is thus a gateway actual innocence claim because it is not a freestanding claim of constitutional error, but rather an attempt to evade a procedural bar and reach the alleged sentencing error.

¶12 Gateway actual innocence claims fall into two subcategories. The first subcategory is implicated when a petitioner claims actual innocence of the crime for which he or she was convicted. *Schlup*, 513 U.S. at 314. The second subcategory is implicated when the petitioner claims actual innocence of a sentencing enhancement. *Id.* at 323. Because Carter is arguing that he is actually innocent of his persistent offender sentence, his claim is in the form of a gateway actual innocence claim in the sentencing phase.

¶13 For gateway actual innocence claims in the sentencing phase, the federal courts require petitioners to show "by clear and convincing evidence that but for constitutional error, no reasonable juror would find him eligible" for the sentence received. *Sawyer*, 505 U.S. at 348. The issue in *Sawyer* was whether the petitioner had sufficiently proved that he was actually innocent of the aggravating factors giving rise to his death penalty sentence. *Id.* at 347. The *Sawyer* court held that the petitioner must show that but for a constitutional error, inadmissible evidence would have been withheld or other evidence would have been admitted that would have prevented the sentencing body from finding any aggravating factors rendering the defendant eligible for the death penalty. *Id.*

¶14 The United States Supreme Court has not definitively ruled on whether the actual innocence doctrine applies in the noncapital sentencing context. *Dretke*, 541 U.S. at 393-94. The federal circuit courts are split on this issue. The Second Circuit Court of Appeals held that the actual innocence doctrine applied in a noncapital sentencing context where a constitutional error undermines the accuracy of the sentence. *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 171 (2d Cir. 2000) (applying actual innocence doctrine to vacate petitioner's enhanced sentence, where the enhancement was based on a subsequent arrest for which the petitioner was ultimately found innocent). However, the Second Circuit has since stated that the actual innocence doctrine does not apply to purely legal errors that do not involve a claim of constitutional error resulting in the conviction or sentencing of one who is actually innocent. *Poindexter v. Nash*, 333 F.3d 372, 381-82 (2d Cir. 2003) (dismissing actual innocence claim where petitioner claims that he is actually innocent of persistent offender sentence because his three prior undisputed convictions should have counted as only one conviction for the purposes of his persistent offender sentence). Thus, while the Second Circuit does not foreclose the availability of the actual innocence doctrine in the noncapital sentencing context, it will not consider innocence claims based purely on alleged legal errors regarding a persistent offender sentence.

¶15 The Fourth Circuit was willing to extend the actual innocence doctrine beyond capital sentence cases, but only if the offender was claiming innocence of a habitual offender sentence. *United States v. Mikalajunas*, 186 F.3d 490, 495 (4th Cir. 1999) (citing *United States v. Maybeck*, 23 F.3d 888, 892-94 (4th Cir. 1994)). In *Maybeck*, the Fourth Circuit reasoned that applying the actual innocence exception in capital and noncapital sentencing cases meets the "objective of protecting defendants from sentencing based on elements of crimes for which they are conclusively

innocent." 23 F.3d at 894. In *Mikalajunas*, the Fourth Circuit recognized that its adoption of the actual innocence doctrine in the habitual offender context permitted the petitioner to claim innocence based on a nonconstitutional error. 186 F.3d at 495 n.4. However, the Fourth Circuit has subsequently clarified that a claim of actual innocence to a habitual offender sentence applies only where the offender's claim stems from an assertion of factual innocence to one of the predicate crimes. *United States v. Pettiford*, 612 F.3d 270, 284-85 (4th Cir. 2010) (dismissing actual innocence claim where offender alleges as the legal error that his prior undisputed conviction was improperly counted as a predicate offense to his habitual offender sentence).

¶16 The Fifth Circuit follows the Fourth Circuit's lead and extends the actual innocence doctrine to noncapital sentencing cases, but only in the context of claims of innocence to the predicates of a habitual offender sentence. *Haley v. Cockrell*, 306 F.3d 257, 265 (5th Cir. 2002), *vacated by Dretke*, 541 U.S. at 393-94 (vacated and remanded for consideration of the defendant's other nondefaulted claims for comparable relief before reaching the actual innocence issue). In *Haley*, the defendant argued there was insufficient evidence to sentence him as a persistent offender because the jury was erroneously informed that he was previously convicted of aggravated robbery involving a deadly weapon. *Id.* at 267. Because there was no evidence supporting the existence of this prior conviction, the defendant did not qualify for a persistent offender sentence. *Id.* Thus, the Fifth Circuit held that the defendant was actually innocent of his persistent offender sentence and remanded for resentencing. *Id.* at 264-68.

¶17 Contrary to the Second, Fourth, and Fifth Circuits, the Eighth and Tenth Circuits have held that an offender cannot be actually innocent of a noncapital sentence. *Embrey v. Hershberger*, 131 F.3d 739, 740-41 (8th Cir. 1997) (dismissing actual innocence claim where offender argues he is innocent of a noncapital sentence because another

federal criminal statute was intended to subsume the statute under which he was sentenced);[2] *United States v. Richards,* 5 F.3d 1369, 1371 (10th Cir. 1993) (dismissing actual innocence claim to a noncapital sentence, where offender bases innocence to enhanced sentence on a subsequent change in the interpretation of a sentencing law).[3] In prohibiting application of the actual innocence doctrine to a purely legal error in the noncapital sentencing context, the Eighth Circuit explained, "We believe, with the Tenth Circuit, that the most natural inference to draw from [prior United States Supreme Court case law] is that in noncapital cases the concept of actual innocence is 'easy to grasp,' [*Sawyer,* 505 U.S. at 341], because 'it simply means the person didn't commit the crime,' [*Richards,* 5 F.3d at 1371]." *Embrey,* 131 F.3d at 740-41.

¶18 The United States Supreme Court had an opportunity to resolve whether the actual innocence doctrine applied in the context of noncapital sentences when it granted certiorari after the Fifth Circuit's decision in *Haley v. Cockrell. Dretke v. Haley,* 540 U.S. 945, 124 S. Ct. 385, 157 L. Ed. 2d 274 (2003). However, the Court declined to reach the noncapital sentencing issue, holding that "a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." *Dretke,* 541 U.S. at 393-94. The Court then remanded the case for further

---

[2] The Court of Appeals relied on *Jones v. Arkansas,* 929 F.2d 375, 380-81 (8th Cir. 1991) when it stated that the Eighth Circuit *does* apply the actual innocence doctrine in the noncapital sentencing context. *Carter,* 154 Wn. App. at 918. However, the Court of Appeals' reliance was misplaced. The Eighth Circuit revisited the actual innocence doctrine after the United States Supreme Court's decision in *Sawyer,* and decided that the actual innocence doctrine did not apply in the noncapital sentencing context. *Embrey,* 131 F.3d at 740-41.

[3] The Tenth Circuit may be open to applying the actual innocence doctrine in some noncapital sentencing contexts because the court noted in dictum that an actual innocence claim may be available in the habitual offender context where "he can show he is innocent of the fact—i.e., the prior conviction—necessary to sentence him as an habitual offender." *Selsor v. Kaiser,* 22 F.3d 1029, 1036 (10th Cir. 1994).

consideration of the habeas applicant's other claims. *Id.* at 396. In justifying this "avoidance principle," the Court explained that

> it is precisely because the various exceptions to the procedural default doctrine are judge-made rules that courts as their stewards must exercise restraint, adding to or expanding them only when necessary. To hold otherwise would be to license district courts to riddle the cause and prejudice standard with ad hoc exceptions whenever they perceive an error to be "clear" or departure from the rules expedient. Such an approach, not the rule of restraint adopted here, would have the unhappy effect of prolonging the pendency of federal habeas applications as each new exception is tested in the courts of appeals.

*Id.* at 394-95. Carter's petition not only requests that we adopt the actual innocence doctrine, but that we follow the lead of the Second, Fourth, and Fifth Circuits in applying the doctrine in the context of challenges to a noncapital sentence.

### *Applicability of the Actual Innocence Doctrine in Washington*

¶19 The State argues that adoption of the actual innocence doctrine as a form of equitable tolling in Washington undermines the finality of judgments and conflicts with prior decisions of this court. We have recognized equitable tolling of the time bar in other contexts. *See In re Pers. Restraint of Bonds*, 165 Wn.2d 135, 141, 196 P.3d 672 (2008). In *Bonds*, a 4-3-2 opinion, all justices agreed equitable tolling was available to some degree. *Id.* at 141, 144-46. The four justice plurality held that whether equitable tolling is justified depends on whether the circumstances are consistent with the purposes of the time bar. *Id.* at 141. The plurality recognized that equitable tolling of the time bar should be used only under the narrowest of circumstances and only where justice requires and where certain predicates are met. *Id.* These predicates, like those

in civil cases, included a showing of "bad faith, deception, or false assurances" by another "and the exercise of diligence by the [person seeking equitable tolling]." *Id.* Although recognizing the availability of equitable tolling of the time bar, the plurality held that it did not apply in that case because the petitioner failed to show that his untimely filing was caused by another's bad faith, deception, or false assurances. *Id.* at 144.

¶20 The two justice concurrence agreed with the plurality that equitable tolling was not justified in *Bonds,* but would not have limited the application of equitable tolling to only those circumstances where one of the predicates of bad faith, deception, and false assurances was shown. *Id.* at 144-45 (Alexander, C.J., concurring). The three justice dissent would have applied equitable tolling and would have held that equitable tolling was available "when justice requires it." *Id.* at 146 (Sanders, J., dissenting).

¶21 Consistent with the majority of the justices in *Bonds,* we recognize that equitable tolling of the time bar may be available in contexts broader than those recognized by the *Bonds* plurality. However, any application of equitable tolling, including under the actual innocence doctrine, must be done only in the narrowest of circumstances and where justice requires.

¶22 As adopted by the federal courts, the actual innocence doctrine is a very narrow exception applied only in circumstances where justice requires. Procedurally, the United States Supreme Court narrowed the actual innocence doctrine through the avoidance principle. The avoidance principle ensures that the actual innocence doctrine is used only where justice requires by prohibiting consideration of the doctrine until after all other claimed exceptions to the time bar have been addressed. *Dretke,* 541 U.S. at 393-94. We agree that this avoidance principle is essential toward maintaining the actual innocence doctrine in Washington as a narrow exception to the time bar, rather than a mere substitute for the statutory exemptions and exceptions to the time bar provided in RCW 10.73.090-.100.

¶23 Substantively, the federal courts apply the doctrine only in rare and extraordinary cases where the petitioner can show that, but for a constitutional error, the facts would demonstrate that the individual was innocent of the crime or of factors justifying the imposed sentence. *Murray*, 477 U.S. at 496; *Sawyer*, 505 U.S. at 372. The United States Supreme Court has permitted consideration of the actual innocence doctrine in the context of claims of innocence of the crime and claims of innocence of the aggravating factors leading to a capital sentence. *Murray*, 477 U.S. at 496; *Sawyer*, 505 U.S. at 348.

¶24 We agree with the Supreme Court that an unlawful death sentence of one who is factually innocent of the aggravating factors giving rise to a capital sentence represents a manifest injustice warranting avoidance of procedural bars just as much as convicting an innocent person of a crime he or she did not commit. This is true regardless of whether the claim is brought in federal or state court. As Justice Black once said, "[I]t is never too late for courts . . . to look straight through procedural screens in order to prevent forfeiture of life or liberty in flagrant defiance of the Constitution." *Brown v. Allen*, 344 U.S. 443, 554, 73 S. Ct. 397, 97 L. Ed. 469 (1953) (Black, J., dissenting). Whether justice requires application of the actual innocence doctrine in the context of an untimely challenge to a *noncapital persistent offender sentence* is a closer question.

¶25 As discussed above, the federal circuit courts are currently split on whether the doctrine applies to a challenge of a noncapital sentence. We are persuaded by the decisions of those federal circuit courts that do apply the actual innocence doctrine to challenges to a persistent offender sentence where the petitioner is claiming factual innocence of a predicate offense giving rise to a persistent offender sentence. As the Second Circuit explained, "By challenging the determination of [the habeas applicant's] responsibility for the act predicating his enhanced sentence, [the habeas applicant] raises precisely the question

that the actual innocence exception contemplates." *Spence,* 219 F.3d at 171. "[T]he availability of actual innocence exception depends not on the 'nature of the penalty' the state imposes, but on whether the constitutional error 'undermined the accuracy of the guilt or sentencing determination.'" *Id.* at 170-71 (quoting *Smith v. Murray,* 477 U.S. 527, 538-39, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986)). Unlawfully restraining someone for the remainder of his or her life under a persistent offender sentence would represent a manifest injustice necessitating that we look through procedural screens such as the time bar to prevent a forfeiture of liberty. *See* Matthew Mattingly, *Actually Less Guilty: The Extension of the Actual Innocence Exception to the Sentencing Phase of Non-Capital Cases,* 93 Ky. L.J. 531, 544-46 (2004). Therefore, we recognize the actual innocence doctrine as an equitable exception to the time bar that applies in the context of a challenge to a persistent offender sentence if the petitioner can show, by clear and convincing evidence that, but for a constitutional error, the petitioner would have been found factually innocent of a sufficient number of predicate offenses to render his persistent offender sentence unlawful.[4]

¶26 The State argues that our decision in *In re Personal Restraint of Turay,* 153 Wn.2d 44, 101 P.3d 854 (2004), prohibits today's holding. In *Turay,* the petitioner sought to avoid a procedural bar in order to challenge his civil confinement as a sexually violent predator. *Id.* at 46.

---

[4] While recognizing the availability of the actual innocence doctrine in the context of a challenge to persistent offender sentences, we do not suggest that the doctrine is available to hear *all* noncapital sentencing challenges. We find the Fourth Circuit's rationale for this limitation persuasive. *Mikalajunas,* 186 F.3d at 494-95. The Fourth Circuit reasoned that extending the actual innocence doctrine into other noncapital sentencing challenges would "swallow" the "cause portion of the cause and prejudice requirement" from which the actual innocence doctrine was originally derived and "would conflict squarely with Supreme Court authority indicating that generally more than prejudice must exist to excuse a procedural default." *Id.* at 495. Although not the question presented in the case before us today, it is questionable whether any application of the actual innocence doctrine outside of a challenge to a persistent offender sentence would raise the necessary level of injustice to support further broadening of the actual innocence doctrine in the noncapital sentencing context.

Among other grounds, the petitioner argued that his PRP should be heard because he was "actually innocent" of being a sexually violent predator where the State had not pleaded or proved a "recent overt act." *Id.* at 50. We disposed of the claim because the petitioner's confinement was civil and not criminal and because there was not an issue of factual innocence to consider. *Id.* at 56. The innocence issue was not factual because the petitioner was not denying that he was presently dangerous, but only that the State had failed to plead and prove the "recent overt act" element. *Id.*

¶27 Contrary to the State's assertion, *Turay* is consistent with the rule we adopt today. In *Turay*, we did not hold that the actual innocence doctrine did not apply in this State. We merely held that the doctrine did not apply in the context of a challenge to civil confinement where the petitioner is claiming a purely legal error rather than factual innocence. *Id.* Having recognized the availability of the actual innocence doctrine in certain circumstances, we must decide whether the Court of Appeals erred in applying the doctrine to Carter's untimely PRP.

*Is Carter's Actual Innocence Claim Valid?*

¶28 Although the Court of Appeals correctly recognized the actual innocence doctrine as an available exception to the RCW 10.73.090 time bar, it erred when it applied the actual innocence doctrine prior to consideration of Carter's other claimed exceptions to the time bar. "[A] federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." *Dretke*, 541 U.S. at 393-94. Under this avoidance principle, the *Dretke* Court declined to reach the issue of actual innocence because the defendant had a potentially viable claim of ineffective assistance of counsel. *Id.* at 394. In this case, Carter raised other statutory claims to avoid the time

bar. Carter argued that there was a significant change in the law material to the comparability issue (RCW 10.73-.100(6)), that the sentence imposed was in excess of the court's jurisdiction (RCW 10.73.100(5)), and that his judgment and sentence was facially invalid (RCW 10.73.090(1)). Therefore, we remand this case for consideration of Carter's alternative claims.

¶29 In order to avoid future appeals, we also note that Carter's actual innocence claim fails on the merits. Carter's actual innocence claim fails because he has neither raised a constitutional error nor met his burden of proof to show factual innocence. The actual innocence doctrine requires proof, by clear and convincing evidence, of a *constitutional* error that resulted in the conviction or sentence of a factually innocent defendant. *Sawyer*, 505 U.S. at 340. Carter does not raise any constitutional error that resulted in his persistent offender sentence. Instead, he argues that his California assault conviction was not comparable to a Washington strike offense, so the trial court was not authorized to sentence him as a persistent offender. PRP at 23. Carter is correct that a sentence rendered without authority is " 'fatally defective and open to collateral attack,' " *In re Personal Restraint of Goodwin*, 146 Wn.2d 861, 869, 50 P.3d 618 (2002) (internal quotation marks omitted) (quoting *Gossett v. Smith*, 34 Wn.2d 220, 224, 208 P.2d 870 (1949)), but this is not the type of "constitutional error" addressed by the actual innocence doctrine. Carter's sentence, even if unauthorized, did not involve the exclusion of true facts or the admission of false ones. Similarly, Carter's claim that the California assault conviction is not comparable to a strike offense is only a claim of statutory error under former RCW 9.94A.120 (1994) and is nonconstitutional in nature. Because Carter has failed to prove that a constitutional error occurred that resulted in his persistent offender sentence, review of Carter's untimely PRP is not warranted under the actual innocence doctrine.

¶30 Carter's actual innocence claim also fails because Carter has not met his burden of proof to show *factual*

innocence. The federal courts have recognized that the actual innocence doctrine "is concerned with actual as compared to legal innocence." *Sawyer*, 505 U.S. at 339. Thus, it is the petitioner's burden to show that, but for the constitutional error that precluded the development of true facts or allowed the admission of false facts, no reasonable sentencing body could have found the petitioner eligible for the persistent offender sentence. *Id.* at 347 n.15, 348.

¶31 Carter argues that he is actually innocent of his persistent offender sentence because his California assault conviction is not comparable to a Washington strike offense. During the sentencing phase of trial, a foreign offense will be counted as a strike offense if it is either legally or factually comparable to a Washington strike offense. *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005). Because Carter seeks to evade the PRP time bar under the actual innocence doctrine, it is his burden to prove, by clear and convincing evidence, the existence of improperly excluded true facts or the admission of false facts establishing his factual innocence of the predicate offenses giving rise to his persistent offender sentence. Carter does not argue that he is innocent of any of his prior offenses. Instead, he argues that his California assault conviction should not have counted toward his persistent offender sentence. This is a claim of legal error. Therefore, Carter has failed to meet his burden to prove that he is actually innocent of being a persistent offender.

## CONCLUSION

¶32 While recognizing that the actual innocence doctrine is a potentially viable exception to the time bar in RCW 10.73.090 where a defendant challenges his persistent offender sentence, we hold that the Court of Appeals erroneously applied the actual innocence doctrine before considering Carter's other available claims to evade the time bar. We reverse and remand this case to the Court of

Appeals with instructions to consider Carter's other claimed exceptions to the time bar.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, OWENS, J.M. JOHNSON, and WIGGINS, JJ., concur.

¶33 STEPHENS, J. (concurring) — I concur in the result reached by the majority because the Court of Appeals erred in applying the actual innocence doctrine before considering other available claims to avoid the time bar. We should heed our own holding and refrain from an unnecessary discussion of the parameters and application of the actual innocence doctrine. That portion of the majority opinion is dicta.

¶34 With respect to the majority's description of the actual innocence doctrine, I also write separately to emphasize that it should not be read to suggest that "factual innocence" in the context of a persistent offender sentencing enhancement requires proof that the defendant did not commit *any* underlying offense. No party makes this argument. Rather, the State argues that proof of factual innocence required Mr. Ernest Carter to prove "that his California conviction was based on conduct that was not factually comparable to the crime of assault in the second degree." Suppl. Br. of Resp't at 11. It would erode the very principle of recognizing actual innocence if the court's decision were read to suggest that a defendant may be wrongfully sentenced as a persistent offender when, though actually innocent of a strike offense, he was "guilty of something."

¶35 With these observations, I concur.

CHAMBERS, J., concurs with STEPHENS, J.